**USAIR, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

**No. 49T05–8809–TA–00046.**

Indiana Tax Court.

Aug. 2, 1989.

---

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Joel Schiff, Kim O. Laurin, Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

USAir seeks a refund of use tax assessed and collected by the Department of Revenue for the years 1979 through 1982. The tax was imposed on USAir for food purchased within Indiana and furnished to passengers and crew members outside of Indiana during the course of interstate flights. USAir claims exemption from the use tax under three alternatives: (1) the food was purchased for resale within the meaning of IC 6–2.5–5–8; (2) the food was acquired for USAir's direct use or consumption in providing public transportation within the meaning of IC 6–2.5–5–27; or (3) the food furnished constitutes "food for human consumption" as provided in IC 6–2.5–5–20. The facts of this case are not in dispute and both parties have filed their respective motions for summary judgment.

### FACTS

During the years in issue, USAir was engaged in providing public transportation for persons or property on a for-profit basis. USAir furnished meals to passengers and crews on flights designated as meal flights. The transportation and meals were provided for a single price. USAir flight attendants had the authority to issue vouchers valid for a meal at an airport restaurant to passengers not receiving a meal on a designated meal flight.

USAir purchased the food for the meals from two caterers in Indiana: Dobbs House Inc., and Michael Lewis, Co. Approximately ten percent (by cost) of the food items purchased from Dobbs House were loaded directly into the cabins of the airplanes in Indianapolis. These items were delivered by Dobbs House to USAir in individual serving trays owned by USAir. The food was heated after it was delivered.

The remainder of the food items purchased from Dobbs House consisted of snacks delivered in unopened cartons of sixteen individual portion cardboard boxes and were directly loaded into the holds of airplanes in Indianapolis in the form purchased and shipped to cities outside of Indiana. The cartons contained dry ice to keep the snacks cooled during storage. Once an airplane arrived at another city, the food was unpackaged and placed in the cabin of the airplane for serving to passengers and crews. USAir primarily purchased coffee, apple juice, and cheese and crackers from Michael Lewis.

USAir has timely filed its "Claim For Refund" with the Department claiming entitlement to a refund of all use tax paid with respect to the food items, plus interest as provided by law. The Department has denied said Claim for Refund.

### DISCUSSION AND OPINION

### I. PURCHASE FOR RESALE

### IC 6–2.5–5–8

IC 6–2.5–5–8 states in pertinent part:
Transactions involving tangible personal property are exempt from the state gross retail tax if the person acquiring the property acquires it for resale, rental, or leasing in the ordinary course of his business without changing the form of the property.

The parties have stipulated that USAir served the food in the form in which it was purchased from Dobbs House and Michael Lewis. USAir must show that it purchased the food for "resale, rental or leasing in the ordinary course of [its] business." It is apparent that the food was not leased or rented by USAir. The issue is whether the food was purchased for resale.

USAir contends that the food was purchased for the purpose of resale. USAir relies on *Department of Treasury v. Fairmount Glass Works, Inc.* (1943), 113 Ind. App. 684, 49 N.E.2d 1, which held that bottles sold by a glass manufacturer to brewers were sales for resale. The bottles went through a chain of transfer from glass manufacturer to brewers to wholesalers to retailers to customers. Included in the amount paid by the wholesalers was the stated amount which the brewers agreed to refund or credit the wholesalers upon return of the bottles. The court found the transaction between the brewer and the wholesaler to be a sale or resale as the "property passes to the wholesaler on delivery and payment of the stipulated price. The brewer parts with the title to and the possession and control of the bottles." 49 N.E.2d at 5. USAir asserts that, likewise, USAir parts with possession, title, and control of the meals when the food is served to its passengers.

The Department contends that the cases relied upon by the *Fairmount Glass* court involved items (such as bottles) that were ultimately returnable by the final customer for refund of an amount agreed upon when purchased and that the food purchased by USAir does not fall within such a category. The Department also contends that mutual agreement and consideration, two elements of a sale, are absent from the provision of meals to USAir's passengers. USAir's ticket prices do not vary depending upon the food served or not served to each person. Passengers do not make agreements with USAir as to whether they will receive food, or what type of food will be served.

The Department asserts that *Sta–Ru Corp. v. Mahin* (1976), 64 Ill.2d 330, 1 Ill.Dec. 67, 356 N.E.2d 67, is persuasive.

Sta–Ru operated Dairy Queen–Brazier franchises that sold their products in plastic containers. The court held that the containers were not purchased by Sta–Ru for resale to its customers because there was no separate consideration for the containers. Unlike the cases involving returnable bottles where separate consideration, the "deposit", was made on the bottles, there was no separate charge for the containers. Likewise, in the case at bar, passengers do not pay separate consideration for the food and snacks.

The issue of resale of food items by airlines has been considered by other jurisdictions. In *Air Jamaica Ltd. v. State Department of Revenue* (Fla.Dist.Ct.App. 1979), 374 So.2d 575, the majority of the court held that no resale took place for meals purchased in Miami prior to departures. The court stated:

> To subdivide the cost of the ticket into percentages to cover the various services rendered by the airline in order to reach the artificial conclusion that there is a sale is to strain the meaning of the term "resale." When a passenger buys a ticket he buys many services, including baggage handling, the service of flight attendants, and in appropriate cases, meals. In addition, a portion of his ticket goes to purchase gasoline and the services of the flight personnel. It is artificial to attempt to divide this package of services into separate sales and say that one of them is the sale of meals furnished to passengers.

*Id.* at 578–579.

The supreme courts of Illinois and Virginia have held that no bargaining occurred between the airlines and the passengers as to the meal contents or the meal costs, resulting in lack of consideration for the meals. Therefore, these courts found that the meals were no more than commercial amenities. *See Commonwealth of Virginia v. United Airlines, Inc.* (1978), 219 Va. 374, 248 S.E.2d 124; *American Airlines, Inc. v. The Department of Revenue* (1974), 58 Ill.2d 251, 319 N.E.2d 28. Specifically, the Virginia Supreme Court stated:

... meals were not separately considered and charged for, but were treated as a commercial amenity and operating expense, necessary in the competitive field of air transportation.

*United Airlines,* 248 S.E.2d at 130.

The court finds *United Airlines* and *Air Jamaica* to be persuasive. It would strain the definition of "resale" to conclude that USAir is reselling the food to its crew and passengers when there is nothing in the price of the ticket to reflect the price of the meals and snacks.

## II. DIRECT USE OR CONSUMPTION IN PROVIDING PUBLIC TRANSPORTATION

### IC 6–2.5–5–27

IC 6–2.5–5–27 states:

Transactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service directly uses or consumes it in providing public transportation for persons or property.

Under this exemption, USAir contends that it is the ultimate user or consumer of the food purchased from Dobbs House and Michael Lewis. USAir notes that under IC 6–2.5–5–27 the sole test for exemption is whether the person acquiring tangible personal property or services "directly uses or consumes it in providing public transportation." USAir asserts that there can be no more direct use than actually consuming the food in transit, as is done in its case. The Department asserts that more than mere use is necessary for exemption under this statute. It is the Department's position that the legislature intended "direct use" to pertain to any item which facilitates transportation and not to items merely used during transportation.

■ Case law has established the standard for exemption under this statute. "Direct use" is determined by whether the item is a "necessary and integral" part of the transportation service. In the case of *Indiana Department of State Revenue v. Indianapolis Transit System, Inc.* (1976),

171 Ind.App. 299, 356 N.E.2d 1204, the court distinguished the exemption for public transportation from the so-called "double-direct" exemption for manufacturing. The court found that the single use of the term "direct" in the transportation statute might allow a broader judicial construction than that used in the double-direct statute. The court concluded that the exemption for public transportation included items which were legally required for Indianapolis Transit to remain in operation. The legislature and Public Service Commission had required Indianapolis Transit to provide many services to its passengers, and Indianapolis Transit would not have been allowed to continue operation without the items used to perform these services. The items found to be exempt included: office supplies necessary for providing publications regarding insurance, schedules, routes, rates and tickets; and items that were used to provide passenger stations, baggage service, and maintenance of buses.

The Indiana Supreme Court, in a case involving the "double-direct" manufacturing statute found the following analysis to be correct:

> ... Our decisions hold the logical and practical distinction between directness and indirectness can be found where the equipment actually exercised some immediate effect on the product.

*Indiana Dep't of State Revenue v. Cave Stone, Inc.,* (1983), Ind., 457 N.E.2d 520, 525 (quoting *Dep't of Revenue v. U.S. Steel Corp.* (1981), Ind.App., 425 N.E.2d 659, 662).

The court concluded that more than just an effect on the surroundings in which the manufacturing process takes place is necessary for an item to be exempt. "Direct use" is distinguished from "indirect use" by whether the item purchased has a necessary and integral effect on the production process. *See Cave Stone,* 457 N.E.2d at 525.

In a more recent case involving the exemption for public transportation, the Indiana Court of Appeals held:

We do not believe the *Cave Stone* standard varies much, if at all, from the "necessary towards operation" approach of *Indianapolis Transit*. The difference in what the two cases might allow lies primarily in the distinction between what is an integral part of manufacturing a product as opposed to what is an integral part of rendering transportation. The latter is a broader concept.

*Indiana Dep't of State Revenue v. Indiana Harbor Belt Railroad Co.* (1984), Ind.App., 460 N.E.2d 170, 175. The court concluded that "the main focus should be on an item's impact on the integrated process or system with respect to which the legislature sought to encourage development by the grant of exemptions." *Id.* The court, therefore, found that items purchased by the railroad which included: tools and equipment to repair the railroad's buildings and track; vehicles used for transporting track maintenance crews; items used to repair such vehicles; and items used in general administrative and managerial operations; were directly used in providing public transportation. The court further stated:

> These categories of items we find to be clearly within the *Cave Stone, Inc.* concept of direct use or consumption in the integrated operation of providing public transportation. The items are needed and used by the Railroad in effectively providing transportation service. They are an integral part of the Railroad's rendering of public transportation.

*Id.* at 176, 177.

■ Based on the foregoing, USAir must show that the food items fall within the "necessary and integral" standard to be granted exemption. This it fails to do. Although many different items were considered to be exempt in *Indianapolis Transit* and *Indiana Harbor*, the items were found to be necessary and integral to actually providing the service of transportation. The service of food on certain flights to airline passengers is not necessary and integral in providing transporta-

tion. USAir contends that serving meals on flights is necessary to compete in the field of public transportation. However, passengers bargain for safe and efficient transportation when they purchase tickets and not for the food which may or may not be provided during the flight. There is no evidence that the food is furnished in order to make the actual service of air travel more effective. The food is only incidental to the airline's transportation service and, therefore, is not necessary and integral to providing transportation.

Both USAir and the Department note that the Department's own regulations contain a partial list of items which are necessary to the rendering of public transportation. Included in this list are "caboose and locomotive compliments such as towels, masking tape, powders, cleaners, ice, water coolers, and bottles [sic] water." 45 I.A.C. 2.2–5–61. USAir submits that it is irrational for the Department to deny exemption for food while at the same time allow exemption for bottled water and other locomotive compliments. The regulation on which USAir relies became effective August 6, 1987. The years in question in the case at bar are the years 1979 through 1982. The regulation is inapplicable to transactions occurring before its effective date. Moreover, the regulation does not list food items as being necessary to the rendering of public transportation.

### III. FOOD FOR HUMAN CONSUMPTION

#### IC 6–2.5–5–20

Subsection (a) of IC 6–2.5–5–20 exempts "sales of food for human consumption" from the state gross retail tax. Subsection (b) defines "food for human consumption" as including:

(1) cereals and cereal products;
(2) milk and milk products, including ice cream;
(3) meat and meat products;
(4) fish and fish products;
(5) eggs, and egg products;
(6) vegetables and vegetable products;

(7) fruit and fruit products, including fruit juices;

(8) sugar, sugar substitutes, and sugar products;

(9) coffee and coffee products;

(10) tea, cocoa, and cocoa products;

(11) spices, condiments, extracts, and salt; and,

(12) oleo margarine.

USAir claims that the food items in dispute plainly fall within subsection (a) and (b). The Department asserts that the items are excluded from subsection (b) by means of subsection (c)(10). Subsection (c)(10) excepts certain food from the meaning of "food for human consumption," in particular:

Food sold by a retail merchant who ordinarily bags, wraps, or packages the food for immediate consumption on or near the merchant's premises, including food sold on a "take out" or "to go" basis.

USAir argues that subsection (c)(10) does not apply to its case because the food is not purchased from Dobbs House and Michael Lewis for "immediate consumption" since 90% of the food purchased was placed into the holds of airplanes for transportation out-of-state. Furthermore, USAir states that the other 10% of the food, which was prepared and heated in single trays, was not consumed until the airplane was over another state. Thus, it would strain the meaning of "immediate consumption" to include USAir in this category.

██ The court finds that the food purchased by USAir is best compared to "take out" food. If an individual were to go to Dobbs House and purchase an individual portion of either the snack or the meal, the individual would be charged sales tax. The food when purchased is packaged, bagged or wrapped by the seller and is ready for immediate consumption regardless of when the purchaser plans to consume it.

The case at bar is no different except that USAir is buying more than one serving and furnishing it to others who will consume it at a time of USAir's determination. USAir relies heavily on *Beasley v. Kwatnez* (1983), Ind.App., 445 N.E.2d 1028.

The issue in that case with regard to IC 6-2.5-5-20(c)(10) was whether the place of the sale of the snack was located on the merchant's premises. Here, the issue is not the location of sale but what is intended by the statute in a broader context. Hence, the reliance is misplaced.

Our supreme court in *Taxpayers Lobby of Indiana, Inc. v. Orr* (1974), 262 Ind. 92, 311 N.E.2d 814, discussed the reasoning behind the food for human consumption exemption. It noted that the legislature had specifically exempted food necessities and staples. "The purpose of such an exemption for 'groceries' is to mitigate the regressivity of the sales tax ..." *Id.*, 311 N.E.2d at 817. The intent of the legislature in enacting this exemption was to lessen the tax burden on the poor:

The items excluded from exemption are basically nonstaple food items or food served for purposes of 'eating out'. In continuing to tax those items while exempting groceries (i.e., basically food necessities), the legislature has followed and adopted a line of demarcation common in the sales tax laws of other states. If nonstaple items were also exempted from the sales tax, their exemption would not constitute substantially to a decrease in the regressivity of the tax, but would decrease unnecessarily the revenue derived from the sales tax.

*Id.*, 311 N.E.2d at 818.

There is no evidence that USAir falls within the class intended to benefit from the exemption.

From this background and the context of the facts of the case at bar, the court finds that subsection (c)(10) means that the food sold on or near a merchant's premises by a retail merchant who ordinarily bags, wraps, or packages the food for immediate consumption, including food sold on a "take-out" or "to-go" basis is not food for human consumption for purposes of the statute.

Here, the food was sold on or near the premises of Dobbs House or Michael Lewis Co. by a retail merchant who packaged, bagged or wrapped the food for immediate

consumption. The food sold by Dobbs House and Michael Lewis, whether it was put into the holds of the airplanes or placed directly into the cabins, was packaged for immediate consumption. Nothing further had to be done to the food other than serving it to the passengers and crews.

IT IS THEREFORE ORDERED that USAir take nothing by its petition.