USAIR, INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T05–9011–TA–00056.

Tax Court of Indiana.

Nov. 8, 1993.

Barton T. Sprunger, Mark J. Richards, Ice, Miller, Donadio & Ryan, Indianapolis, for petitioner.

Pamela Carter, Atty. Gen. of Indiana, Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

This appeal calls on the court to reconsider the holding in *USAir, Inc. v. Indiana Department of State Revenue* (1989), Ind. Tax, 542 N.E.2d 1033, *aff'd* (1991), Ind., 582 N.E.2d 777 (*USAir I*). In that case, this court and our supreme court rejected the petitioner's claims of exemption from use tax.[1] Now the same petitioner, USAir, Inc. (USAir), appeals another final determination of the respondent, the Indiana Department of State Revenue (the Department), claiming the same entitlement to use tax exemptions it raised in *USAir I*. USAir also claims it is not subject to imposition of the use tax, regardless of exempt status. The matter is before the court on the parties' cross motions for summary judgment.

### FACTS AND HISTORY

In *USAir I*, USAir, an airline engaged in the public transportation of passengers and cargo, sought a refund of use tax paid on prepared meals and snacks it used for in-flight service to its passengers and crew. USAir based its claim on three theories. First, USAir argued the purchases were

---

1. IND.CODE 6–2.5–3–1 through 6–2.5–3–8.

exempt under IND.CODE 6–2.5–5–8 as purchases for resale in the ordinary course of business.[2] Second, USAir claimed it directly used or consumed the food in providing public transportation within the meaning of the exemption provided by IND.CODE 6–2.5–5–27. Finally, USAir claimed the food was exempt as food for human consumption under IND.CODE 6–2.5–5–20. The courts rejected all the claims. *USAir I*, 542 N.E.2d at 1036–39, 582 N.E.2d at 779–80.

The undisputed material facts in the present appeal remain largely the same as in *USAir I*. The Indianapolis International Airport is a USAir hub. USAir purchases meals, snacks, and soft drinks from Dobbs House, Inc., an Indianapolis caterer, both for flights originating from Indianapolis and for flights from other cities. Dobbs House, whose catering facility is located on the grounds of the Indianapolis International Airport, delivers the food for Indianapolis flights in individual serving trays. USAir places these trays in the cabins and USAir crews subsequently heat them for in-flight service to passengers and crew members. USAir does not serve the food in Indiana airspace, however, because the flights have already left Indiana by the time they reach the cruising altitude at which food is served. Dobbs House delivers the food for non-Indianapolis flights in cartons. USAir places these cartons in the bellies of planes leaving Indianapolis and transfers them onto other planes at airports outside Indiana for in-flight service on those other planes.

USAir paid no gross retail tax on the purchases from Dobbs. The Department assessed use tax, which USAir timely paid. USAir then filed a claim for refund and now appeals from the Department's denial of that claim.

## DISCUSSION AND DECISION

### Standard of Review

■ In reviewing appeals from the Department, the court is not bound by either the evidence or the issues presented at the administrative level. Instead, the court reviews the case *de novo*. *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 986 (citing IND. CODE 6–8.1–9–1(d); *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 869, aff'd (1991), Ind., 572 N.E.2d 481, cert. denied (1991), —— U.S. ——, 112 S.Ct. 337, 116 L.Ed.2d 277). Although USAir bears the burden of proof to show it falls within the claimed exemptions, the Department bears the burden of proof to show imposition is proper in the first instance. *Id.* (citing *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1225; *Wechter v. Indiana Dep't of State Revenue* (1989), Ind.Tax, 544 N.E.2d 221, 224, aff'd (1990), Ind., 553 N.E.2d 844). Moreover, because this is a summary judgment case, the court may grant summary judgment to either party only when no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Fort Wayne Nat'l Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 621 N.E.2d 668, 670. Cross motions do not alter the standard of review. *Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 766, aff'd (1992), Ind., 587 N.E.2d 1311.

### Imposition of Use Tax

■ The use tax is "[a]n excise tax … imposed on the *storage, use, or consumption* of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction." IND. CODE 6–2.5–3–2(a) (emphasis added). Like most states, Indiana has complementary sales and use taxes. *See* IND.CODE 6–2.5–3–4(a). *See also Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Rev-*

---

**2.** This court denied USAir's purchase for resale claim. *USAir I*, 542 N.E.2d at 1036. USAir did not argue that claim on appeal to our supreme court and has not raised the issue in the present proceedings.

*enue* (1983), 460 U.S. 575, 581–82, 103 S.Ct. 1365, 1370, 75 L.Ed.2d 295, 302. The complementary formulation exists to ensure non-exempt retail transactions that escape sales tax liability are nonetheless taxed. *See, e.g., Great American Airways v. Nevada State Tax Comm'n* (1985), 101 Nev. 422, 705 P.2d 654, 657–58, n. 5, *cert. denied* (1986), 479 U.S. 817, 107 S.Ct. 74, 93 L.Ed.2d 31; Walter Hellerstein and Jerome Hellerstein, *State Taxation* v. 2, 16–2 (1992). Within IC 6–2.5–3, " '[u]se' means the exercise of *any* right or power of ownership over tangible personal property." IC 6–2.5–3–1(a) (emphasis added). " 'Storage' means the keeping or retention of tangible personal property in Indiana for any purpose except the subsequent use of that property solely outside Indiana." IC 6–2.5–3–1(b).

The conflict in the present case arises from the parties' competing interpretations of these definitions of "use" and "storage." The Department relies on IC 6–2.5–3–1(a) for the idea that USAir engages in a taxable "use" of the Dobbs House food, notwithstanding that USAir's passengers and crew do not eat the food in Indiana.[3] USAir, on the other hand, relies on IC 6–2.5–3–1(b) for the idea that use does not include Indiana activities incidental to storage for subsequent use outside this state. Each position is correct, but incomplete.

■■■ Under IC 6–2.5–3–1(a), a taxpayer "uses" tangible personal property when it "exercise[s] ... *any* right or power of ownership over [that] tangible personal property." IC 6–2.5–3–1(a) (emphasis added). Because the statute does not define "any," the court gives the word its plain, ordinary, and usual meaning. *See Consolidation Coal Co. v. Indiana Dep't of State Revenue* (1991), Ind., 583 N.E.2d 1199, 1201, *aff'g* (1989), Ind.Tax, 538 N.E.2d 309 (citing *Spaulding v. International Bakers Serv.*

(1990), Ind., 550 N.E.2d 307, 309). "Any" means "one, no matter what one ... that is selected without restriction or limitation of choice." *Webster's Third New International Dictionary* 97 (1981). This is a broad definition, leading to a very low threshold of taxability. Almost any act not otherwise exempt will constitute a taxable use. Although Indiana courts have not previously addressed this question specifically, courts of other jurisdictions with similar statutory language have also construed "use" broadly. *See, e.g., Broadmoor Hotel, Inc. v. Department of Revenue* (1989), Colo.App., 773 P.2d 627 (hotel was liable for use tax on snacks made available to bar patrons); *Magic II, Inc. v. Dubno* (1988), 206 Conn. 253, 259, 537 A.2d 998, 1001, *cert. denied* (1988), 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (citing *United Aircraft Corp. v. Connelly* (1958), 145 Conn. 176, 181, 140 A.2d 486) ("extremely limited use is sufficient to constitute a 'taxable use' under the use tax"); *United Aircraft Corp.*, 145 Conn. 176, 140 A.2d 486 (government contractor retained title during transport of property; this was a taxable use); *McNamara v. D.H. Holmes Co.* (1987), La. App., 505 So.2d 102, *rev. denied*, La., 506 So.2d 1224, *aff'd* (1988), 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (department store's distribution of catalogs to in-state addresses was a taxable use); *Louisville Title Agency v. Kosydar* (1975), 43 Ohio St.2d 109, 113, 330 N.E.2d 899, 902 (allowing mechanics to install new equipment on a boat was subject to use tax because it "was an exercise of a right or power incidental to the ownership of the" boat); *J.C. Penney Co. v. Olsen* (1990), Tenn., 796 S.W.2d 943, 946 (citing *Woods v. M.J. Kelley Co.* (1980), Tenn., 592 S.W.2d 567, 571, *cert. denied* (1980), 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854).[4]

---

**3.** USAir also purchases food from an Illinois firm, Michael Lewis Co. The Department initially assessed use tax against USAir for the food USAir bought from Michael Lewis, but the parties have agreed to settle that part of the case, and no use tax is due on the food USAir purchased from Michael Lewis.

**4.** Decisions from other states are not binding of course, but they are instructive. *See Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 583 (quoting *Hatfield v. La Charmant Home Owners Ass'n* (1984), Ind.App., 469 N.E.2d 1218, 1221, *trans. denied*), *aff'd* (1992), Ind., 585 N.E.2d 1336.

As broad as "use" is, however, it is not all-encompassing. The court must read the statute to give full effect to every word, *Monarch Steel Co. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708, 713 (citing *Maurer,* 607 N.E.2d at 987), and strive to avoid an interpretation that would render any part of the statute meaningless. *Faris Mailing, Inc. v. Indiana Dep't of State Revenue* (1990), Ind.Tax, 557 N.E.2d 713, 716 (citing *Foremost Life Ins. Co. v. Department of Ins.* (1980), 274 Ind. 181, 186, 409 N.E.2d 1092, 1096). In addition to "use," IC 6–2.5–3–2(a) imposes tax on the "storage" or "consumption" of tangible personal property in Indiana, and the court must therefore read "use" in conjunction with "storage" and "consumption." [5]

" 'Storage' means the keeping or retention of tangible personal property in Indiana for any purpose except the subsequent use of that property solely outside Indiana." IC 6–2.5–3–1(b). The exception for use outside Indiana "qualif[ies] or limit[s] the plain meaning of [the] statute's main clause by restraining it to except something that would otherwise be within its scope." *Fort Wayne Nat'l Corp.,* 621 N.E.2d at 672 (citing *Kirkpatrick v. King* (1950), 228 Ind. 236, 246, 91 N.E.2d 785, 789; *Ernst & Ernst v. Underwriters Nat'l Assurance Co.* (1978), 178 Ind.App. 77, 83, 381 N.E.2d 897, 900). Under the main clause, the use tax is imposed on the keeping or retention of tangible personal property in Indiana. The plain meaning of "keeping" is "1: the act of one that keeps: as ... c: a reserving or preserving for future use...." *Webster's Third New International Dictionary, supra,* at 1236. The plain meaning of "retention" is "1e: a keeping in one's own possession or control...." *Id.,* at 1938. These definitions demonstrate "storage" is quintessentially a passive act, but if the storage is solely for subsequent use outside Indiana, the exception to the main clause prohibits imposition

of the use tax. This issue lies at the heart of the parties' dispute.

The Department claims USAir uses the food in Indiana to satisfy USAir's food service needs. This proves too much. When property is stored in Indiana solely for subsequent use outside Indiana, it is of course "used" to satisfy some need, but it is not taxably used within the meaning of IC 6–2.5–3. By the same token, it is quite naturally impossible for property to go from "storage" in Indiana to "use" elsewhere without some incidental handling or transport, but once again there is no taxable use. To hold otherwise and follow the Department's reasoning would subsume "storage" within "use" and nullify the exception for use outside Indiana. The court cannot presume the legislature intended to enact a nullity when it defined "storage" in IC 6–2.5–3–1(b). *See Monarch Steel,* 611 N.E.2d at 713 (citing *Hinshaw v. Board of Comm'rs* (1993), Ind., 611 N.E.2d 637, 638).

"Storage," then, refers to passive acts such as holding tangible personal property in a warehouse, and the incidental exercise of ownership rights in removing tangible personal property from storage for use outside Indiana is not a taxable use. This does not mean, however, the Department's case fails, for to fall within the ambit of the exception for use outside Indiana, there must first be "storage" within the meaning of the main clause of IC 6–2.5–3–1(b). If there is no "storage" for subsequent use outside Indiana, any exercise of ownership rights or powers is a taxable use. IC 6–2.5–3–1(a); 6–2.5–3–2(a).

In the present case, USAir receives the food from Dobbs House and pays for it in the ordinary course of business. Once USAir receives the food, it has full ownership control and it exercises its authority over the food by placing the food onto its planes in Indianapolis, as well as determining which meals and snacks go into which planes and whether they go into the cabin or the belly. Finally, USAir

---

**5.** There is no dispute over "consumption" in the present case, however, and the court therefore

does not address "consumption."

transports the food out of Indiana. These actions fall squarely within the statutory definition of "use": in deciding the disposition of the food, USAir "exercise[d] ... [a] right or power of ownership ..." over the food. IC 6–2.5–3–1(a). Nonetheless, USAir repeatedly reminds the court that the food is not eaten in Indiana. The location where the food is eaten, however, is not dispositive under the statute. "In effect, [USAir] would define the word *use* to mean the intended or the ultimate use of [the] property, ... [but] [t]hat line of reasoning does not comport with the statutory definition of *use....*" *Woman's Int'l Bowling Congress, Inc. v. Porterfield* (1971), 25 Ohio St.2d 271, 274, 267 N.E.2d 781, 783 (emphasis in original).[6] Moreover, simply because the food is not immediately eaten does not mean it is stored within the meaning of IC 6–2.5–3–1(b). Instead, the food is transported until it reaches the location outside Indiana at which it is eaten. Transport is not storage. USAir simply holds the food in the planes' bellies and kitchens incident to transporting the food. USAir exercises ownership rights over the food in Indiana and is therefore subject to imposition of the use tax.[7]

*Exemptions From the Use Tax*

■ USAir next raises the same arguments it made in *USAir I*. USAir correctly argues that " 'each assessment and each tax year stands alone.' " *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs* (1991), Ind.Tax, 568 N.E.2d 1116, 1124 (quoting *Foursquare Tabernacle Church v. State Bd. of Tax Comm'rs* (1990), Ind.

Tax, 550 N.E.2d 850, 853). Nonetheless, nothing USAir offers, including Dobbs House's lack of eating facilities, is persuasive.[8] It does not lie with this court to overrule our supreme court. Moreover, although each tax year stands alone, so too does each tort and each crime. The general tax law principles this court enunciates in its opinions, and those the Indiana Supreme Court enunciates, hold true for taxpayers and the State in all cases in which they are applicable, just as general tort law and criminal law principles hold true.

■ USAir points out that 45 I.A.C. 2.2–5–61, which was not in effect during the years at issue in *USAir I*, is in effect for the years at issue in this appeal. *See USAir I*, 542 N.E.2d at 1037. Under IC 6–2.5–5–27, transactions involving tangible personal property directly used or consumed in providing public transportation are exempt from sales and use tax. 45 I.A.C. 2.2.5–61, promulgated in compliance with IC 6–2.5–5–27, lists several items the Department has determined are directly used or consumed in providing public transportation by rail. The list includes "[c]aboose and locomotive compliments [sic] such as towels, masking tape, powders, cleaners, ice, water coolers, and bottles [sic] water." 45 I.A.C. 2.2–5–61. USAir claims the regulation is broad enough to exempt the Dobbs House food. The court disagrees.

The only comestible the regulation includes is water, in various forms. It does not include food, *USAir I*, 542 N.E.2d at 1037, and food and water are simply not

---

**6.** At the time of the *Woman's Bowling Congress* decision, Ohio, much like Indiana, provided that "[u]se means and includes the exercise of any right or power incidental to the ownership of the thing used." *Id.,* quoting OHIO REV.CODE 5741.01(C).

**7.** USAir urges the court to follow the holding in *Hasbro Industries, Inc. v. Norberg* (1985), R.I., 487 A.2d 124. In *Hasbro,* the Rhode Island Supreme Court held the taxpayer was not subject to imposition of use tax on tangible personal property purchased from in-state vendors and stored for subsequent use outside the state.

The Rhode Island use tax statutes defined storage as "any keeping or retention in this state, *except for ... subsequent use solely outside this state ...*" *Id.* at 129 (quoting R.I.GEN. LAWS § 44–18–9) (alteration in original). This language is almost identical to the language of IC 6–2.5–3–1(b). The *Hasbro* court did not elaborate on the facts surrounding the storage of the property at issue, but, given Rhode Island's statutory language, this court can only presume the *Hasbro* taxpayer actually stored the property at issue. As already stated, however, USAir did not store the Dobbs House food, and *Hasbro* is therefore not persuasive.

**8.** *See also USAir, Inc. v. Commonwealth* (1993), —— Pa.Commw. ——, 629 A.2d 300, 306 (Pellegrini, J., dissenting) (agreeing with *USAir I* ).

the same thing. Moreover, the regulation applies only to "[c]aboose and locomotive compliments [sic]." The court agrees with USAir that the Department's stated rationale for promulgating the regulation, to comply with the holding in *Indiana Department of State Revenue v. Indiana Harbor Belt Railroad Co.* (1984), Ind.App., 460 N.E.2d 170, is irrelevant. The Department is obliged to apply the regulation properly, but in the case at bar, the Department has met its obligation.

The food at issue in this case was supplied to both passengers and crew, but the regulation does not refer to items for railroad passengers; it refers only to items for the caboose and locomotive, where crew members normally travel. *See, e.g., Webster's, supra,* at 310. Assuming without deciding there is no distinction between water and ice purchased for train crews and water and ice purchased for airline crews, USAir could be entitled to the IC 6–2.5–5–27 exemption if it presented evidence it purchased water and ice for its crews. The only evidence USAir presented, however, showed USAir purchased food and prepared soft drinks, but not water or ice, for both its passengers and crew, and the regulation therefore does not control.[9]

## CONCLUSION

For all the foregoing reasons, the court grants the Department's motion for summary judgment and AFFIRMS the Department's final determination denying USAir's claim for refund.

---

**9.** Even if, as USAir argues, water and food were indistinguishable, the regulation nonetheless does not apply to passengers, and only the water and food of the crew could conceivably fall within the regulation's terms.