ATTORNEY FOR PETITIONER:
**BRETT J. MILLER**
BINGHAM GREENEBAUM DOLL LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**WINSTON LIN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Apr 13 2017, 3:48 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| ZIMMER, INC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 49T10-1507-TA-00025 |
| | ) |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) |
| | ) |
| Respondent. | ) |

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**April 13, 2017**

WENTWORTH, J.

Zimmer, Inc. has challenged the Indiana Department of State Revenue's assessments of use tax for the 2009, 2010, and 2011 tax years (the "years at issue"). The matter is currently before the Court on the parties' cross-motions for summary judgment.[1] The dispositive issue is whether Zimmer's Indiana activities regarding its exhibition booth components constituted a taxable use or non-taxable storage for use

---

[1] The Department has designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

outside the state during the years at issue. Upon review, the Court grants the cross-motions in part and denies them in part.

## FACTS AND PROCEDURAL HISTORY

Zimmer is a domestic corporation headquartered in Warsaw, Indiana.[2] (Resp't Des'g Evid. Supp. Mot. Summ. J. ("Resp't Des'g Evid."), Ex. 7 ¶ 1; Pet'r Des'g Evid. Supp. Cross-Mot. Summ. J. & Opp'n Resp't Mot. Summ. J. ("Pet'r Des'g Evid."), Ex. C at 8.) Zimmer designs, manufactures, and distributes a wide variety of medical products, including orthopedic reconstructive devices; spine, cranial maxillofacial, and thoracic devices; dental implants; and related surgical products. (Pet'r Des'g Evid., Ex. C at 8; Resp't Des'g Evid., Ex. 6 at 6.) Consequently, Zimmer's customer base consists of numerous entities, such as large multi-national enterprises, hospitals, dentists, orthopedic surgeons, and neurosurgeons. (See Pet'r Des'g Evid., Ex. C at 8.)

During the years at issue, Zimmer marketed its products at approximately 80 to 120 out-of-state trade shows and conventions. (See Resp't Des'g Evid., Ex. 1 at 36-39; Pet'r Des'g Evid., Ex. G ¶¶ 3, 11.) In preparation for one of the largest of these conventions, the American Association of Orthopedic Surgeons ("AAOS"), Zimmer hired Catalyst Exhibits, an Illinois-based exhibit house, to annually design and manufacture a new exhibition booth. (See Resp't Des'g Evid., Ex. 1 at 37-40, 96, Ex. 7 ¶ 10; Pet'r Des'g Evid., Ex. C at 9, Ex. D at 13.) Each year this exhibition booth incorporated some of the original, repaired, refurbished, or modified components of prior exhibition booths (e.g., counters, double-deck structures, structural beams, or walls). (See Resp't Des'g Evid., Ex. 1 at 92-101, Ex. 2 at 34-36, 38, 52-54, 63.) As a result, Zimmer arranged for

---

[2] Zimmer is now known as Zimmer Biomet. (See Pet'r Des'g Evid. Supp. Cross-Mot. Summ. J. & Opp'n Resp't Mot. Summ. J. ("Pet'r Des'g Evid."), Ex. C at 8.)

2

some of its former exhibition booth components that it kept in its Indiana warehouse to be shipped to Catalyst Exhibits for incorporation into the new AAOS exhibition booth, while others were retained in its Indiana warehouse. (See Resp't Des'g Evid., Ex. 1 at 69, Ex. 2 at 34-36, 41-45, 60-62; Pet'r Des'g Evid., Ex. G ¶ 4.)

While the structure of the AAOS exhibition booth changed from year to year, Zimmer's process of getting the exhibition booth components to and from the convention site was relatively consistent – approximately 15 semi-trucks moved the exhibition booth components from Catalyst Exhibits's Illinois location and Zimmer's Indiana warehouse to the convention site. (See Pet'r Des'g Evid., Ex. D at 21, 31-35; Resp't Des'g Evid., Ex. 1 at 69, 71-72.) Thereafter, independent third parties set-up and dismantled the exhibition booth at the convention site. (See Pet'r Des'g Evid., Ex. D at 64-66.) After dismantling, the exhibition booth components were returned to Zimmer's Indiana warehouse for continued storage and for possible incorporation into other exhibition booths for approximately 15 other out-of-state trade shows.[3] (See, e.g., Resp't Des'g Evid., Ex. 1 at 71-73, 97-98, Ex. 3 at 33, 35-37.)

Each time the exhibition booth components were returned to Zimmer's Indiana warehouse, its in-house carpenter inspected and sorted them based on their expected future use and the extent of any damage. (See Resp't Des'g Evid., Ex. 1 at 79, Ex. 2 at 60-61, Ex. 4 at 15, 19-22.) (See also Resp't Des'g Evid., Ex. 1 at 73-74 (stating that "there's always something that gets broken at the big AAOS annual" convention), Ex. 3 at 31 (indicating that exhibition booth components typically required repairs after use in two or three out-of-state trade shows).) If an exhibition booth component had major

---

[3] During the years at issue, the exhibition booth components were not used in exhibition booths for conventions and trade shows in Indiana. (See Pet'r Des'g Evid., Ex. G ¶¶ 6, 15.)

damage, it was shipped to Catalyst Exhibits for immediate repair or it was set aside in Zimmer's Indiana warehouse for subsequent repair, refurbishing, or modification. (See Resp't Des'g Evid., Ex. 1 at 72-74; Ex. 2 at 53.) When an exhibition booth component had minor damage, such as laminate chips, paint scratches, fabric tears, or broken doors/locks, Zimmer's in-house carpenter repaired the item at its Indiana warehouse. (See Resp't Des'g Evid., Ex. 1 at 73-74, Ex. 2 at 38; Pet'r Des'g Evid., Ex. G ¶ 16.) In instances where an exhibition booth component was intact but would not be used in another trade show that year, Zimmer kept it in its Indiana warehouse until it was to be incorporated into a future exhibition booth or permanently retired. (See Resp't Des'g Evid., Ex. 2 at 60-63.)

On December 27, 2012, Zimmer filed a claim with the Department seeking a refund of $1,076,768 in sales tax remitted on purchases of items that were used to manufacture its products during the years at issue. (See Resp't Des'g Evid., Ex. 6 at 4-6, Ex. 7 ¶ 3.) The Department subsequently audited Zimmer and determined that it owed $523,890.93 in use tax on its exhibition booth components. (See generally Resp't Des'g Evid., Ex. 6.) Thereafter, the Department granted Zimmer's refund claim in part and offset the refunded amount by the use tax liability. (See, e.g., Resp't Des'g Evid., Ex. 5 ¶ 5.) Zimmer protested the Department's use tax determination and the Department denied Zimmer's protest on April 20, 2015. (See generally Resp't Des'g Evid., Ex. 7 at Exs. A-B.)

On July 7, 2015, Zimmer initiated this original tax appeal. On August 29, 2016, the Department filed its motion for summary judgment. On October 13, 2016, Zimmer filed its cross-motion for summary judgment. On January 12, 2017, the Court held a

4

hearing on the cross-motions. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is proper when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a motion for summary judgment, the Court will construe all properly asserted facts and the reasonable inferences drawn therefrom in favor of the non-moving party. See Fresenius USA Mktg., Inc. v. Indiana Dep't of State Revenue, 56 N.E.3d 734, 735 (Ind. Tax Ct. 2016), review denied. Cross-motions for summary judgment do not alter this standard. Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), review denied.

## LAW

Indiana imposes a use tax on the "storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction." IND. CODE § 6-2.5-3-2(a) (2017). During the years at issue, "use" was defined as "the exercise of any right or power of ownership over tangible personal property" and "storage" was defined as "the keeping or retention of tangible personal property in Indiana for any purpose except the subsequent use of that property solely outside Indiana." IND. CODE § 6-2.5-3-1(a)-(b) (2009) (amended 2015) (emphasis added). Consequently, when property was stored in Indiana for subsequent use solely outside the state, it was not subject to use tax. See id. See also, e.g., USAir, Inc. v. Indiana Dep't of State Revenue, 623 N.E.2d 466, 469-70 (Ind. Tax Ct. 1993).

5

**ANALYSIS**

The issue in this case is whether, during the years at issue, Zimmer's Indiana activities regarding its exhibition booth components constituted a taxable use or non-taxable storage for use outside the state. The parties do not dispute that the exhibition booth components were used in exhibition booths at out-of-state trade shows. (See, e.g., Pet'r Combined Resp. Br. Opp'n Resp't Mot. Summ. J. & Br. Supp. Cross-Mot. Summ. J. ("Pet'r Br.") at 8 ¶ 29.) The Department claims, however, that Zimmer's Indiana activities regarding its exhibition booth components subjected them to use tax for each of the following reasons.

**1.**

The Department claims that Zimmer's in-state storage of the exhibition booth components was subject to use tax because the type of storage excluded from use tax requires permanent use outside the state, not – as here – continuous revolutions between in-state storage and out-of-state use. (See Hr'g Tr. at 47-48 (citing generally Miles, Inc. v. Indiana Dep't of State Revenue, 659 N.E.2d 1158 (Ind. Tax Ct. 1995)).) (See also Resp't Mem. Supp. Mot. Summ. J. ("Resp't Mem.") at 10-11.) The Department's claim that Zimmer's revolving storage, out-of-state use, re-storage, and re-use rendered its exhibition booth components taxable, however, is unpersuasive.

Nowhere in Indiana Code § 6-2.5-3-1(b) is there an express temporal limitation on storage or a prohibition on returning previously stored property to Indiana for continued storage. See I.C. § 6-2.5-3-1(b). But see, e.g., IND. CODE § 6-2.5-3-1(b), (d) (2015) (introducing a 180-day temporal limitation into the definition of storage). Rather, the statutory exclusion from use tax applies only in instances where property is stored in

6

Indiana for subsequent use solely outside of this state.[4]  See I.C. § 6-2.5-3-2(b). Consequently, Zimmer's repeated in-state storage and out-of-state use of its exhibition booth components is consistent with the statutory exclusion of storage for subsequent use solely outside Indiana and is not subject to use tax on this basis.  See Indiana Dep't of State Revenue v. Horizon Bancorp, 644 N.E.2d 870, 872 (Ind. 1994) (stating that "[n]othing may be read into a statute which is not within the manifest intention of the legislature as gathered from the statute itself" (citation omitted)).

**2.**

The Department further supports its assertion by claiming that Zimmer exercises other rights of ownership over its exhibition booth components in Indiana that constitute taxable uses.  (See Resp't Mem. at 7-10.)  The Department explains that Indiana is Zimmer's "central hub for its year-long, continuous process" of inspecting and selecting future booth locations, developing goals and objectives for its booths, and directing the continual updating and modification of its exhibition booth components.  (See Resp't Mem. at 8; Resp't Reply Supp. Mot. Summ. J. & Opp'n Pet'r Cross-Mot. Summ. J. ("Resp't Reply Br.") at 2-3.)  Accordingly, the Department contends that "the correct focus in this case is not on passive acts related to Zimmer's [exhibition booth components] . . . but, rather, on Zimmer's active decision-making regarding them in Indiana."  (Resp't Reply Br. at 2.)  This argument is also unpersuasive.

Planning, setting goals, and other similar determinations regarding tangible personal property are certainly rights or powers inherent in the ownership of property,

---

[4]  Property need not be identified for out-of-state shipment prior to its in-state storage for the exclusion to apply because that requirement would not only impermissibly narrow the scope of the exclusion, but also frustrate its purpose (i.e., encouraging businesses to locate their regional warehouses in Indiana).  Miles, Inc. v. Indiana Dep't of State Revenue, 659 N.E.2d 1158, 1163 n.11 (Ind. Tax Ct. 1995).

7

but decision-making is not an exercise of a right or power that alone would subject a property to the use tax. For example, this Court recently held that a taxpayer owed use tax because it "exercised its rights as an owner . . . when it <u>chose to register, license, and title [its vehicles] in Indiana</u>." <u>See</u> <u>Asplundh Tree Expert Co. v. Indiana Dep't of State Revenue</u>, 38 N.E.3d 744, 747 (Ind. Tax Ct. 2015) (emphasis added), <u>review denied</u>. The holding in that case, however, was not due to the taxpayer's mental decision of making a choice alone, as the Department claims, but instead was triggered by the <u>actions</u> that followed the choice - registering, licensing, and titling the vehicles in Indiana. <u>See</u> <u>id.</u> Similarly, Zimmer's <u>decisions</u> regarding its exhibition booth components cannot trigger the imposition of use tax without concomitant physical actions in Indiana that are not excluded. <u>See</u> <u>USAir</u>, 623 N.E.2d at 470 (recognizing that certain exercises of incidental rights of ownership are not taxable uses under the statutory exclusion for storage). Accordingly, Zimmer's "decision-making" activities regarding its exhibition booth components did not subject them to use tax during the years at issue.

**3.**

The Department also argues Zimmer's exhibition booth components were subject to use tax because "more than just decisions" occurred in Indiana, such as conducting internal meetings to determine effectiveness and improvements, inspecting the components when they came back to Indiana, insuring the components, and arranging logistics. (<u>See</u> Resp't Mem. at 9; Hr'g Tr. at 31-32.) The Department explains that these activities are "critical" because creating assortments of exhibition booths that effectively market Zimmer's products is necessary to actually use the exhibition booth

8

components out-of-state. (See Hr'g Tr. at 32-33.)

When property is stored in Indiana solely for subsequent use outside Indiana, there are incidental actions necessary to facilitate both its storage and its transport for use solely outside the state. See, e.g., USAir, 623 N.E.2d at 470 (stating "the incidental exercise of ownership rights in removing tangible personal property from storage for use outside Indiana is not a taxable use"). Here, the activities of conducting meetings, inspecting, insuring, and arranging logistics for the exhibition booth components were necessary for, but incidental to, the property's in-state storage and out-of-state use. See id. (explaining that the handling and transporting of property between storage and use is not taxable because doing so subsumes "storage" within "use"). Thus, those activities do not subject Zimmer's exhibition booth components to use tax.

**4.**

Finally, the Department claims that the repair of damaged exhibition booth components by Zimmer's in-house carpenter at its Indiana warehouse constituted a taxable use. (See Resp't Mem. at 8-10; Hr'g Tr. at 32.) Zimmer, however, maintains that these repairs were merely incidental to the in-state storage and out-of-state use of its property because they were "minor" and they prevented the deterioration of the exhibition booth components during storage. (See Pet'r Br. at 16; Hr'g Tr. at 66-69.)

Repairing the exhibition booth components, regardless of the extent of damage, is a taxable exercise of ownership rights unless the repairs are incidental to the property's "storage" for "use solely outside Indiana." See I.C. § 6-2.5-3-3-1(b); see also USAir, 623 N.E.2d at 469 (explaining that Indiana's statutory definition of a taxable use is broad and leads to a very low threshold of taxability). The designated evidence

9

shows that the damaged exhibition booth components were stored in Zimmer's Indiana warehouse "as is," and it does not establish that those repairs were necessary for storage to occur or that the exhibition booth components (or any others) deteriorated during storage. (See, e.g., Resp't Des'g Evid., Ex. 1 at 72-74; Ex. 2 at 53.) Accordingly, the repairs in Indiana constitute taxable uses. See USAir, 623 N.E.2d at 469 (stating that for purposes of the use tax almost any act not otherwise excluded constitutes a taxable use).

## CONCLUSION

The undisputed material facts establish that Zimmer stored its exhibition booth components in Indiana for subsequent use solely at out-of-state trade shows, but that it repaired some exhibition booth components in its Indiana warehouse on an as-needed basis. Accordingly, the Court GRANTS summary judgment in favor of Zimmer on those exhibition booth components that were stored in Indiana for subsequent use solely outside Indiana. The Court GRANTS summary judgment in favor of the Department, however, on those exhibition booth components that were repaired in Indiana during the years at issue.

SO ORDERED this 13th day of April 2017.

Martha Blood Wentworth, Judge
Indiana Tax Court

DISTRIBUTION:
Brett J. Miller, Winston Lin