James W. THOMAS, Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9512–TA–00132.

Tax Court of Indiana.

Jan. 3, 1997.

James W. Thomas, Evansville, pro se.

Pamela Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

Petitioner, James W. Thomas, challenges the Department of State Revenue's Letter of Findings assessing him for unpaid income tax, penalties, and interest for 1992. Thomas presents the following issues on appeal: (1) whether the Department could submit a reconstruction of Thomas's tax return as evidence of the original; (2) whether the Department properly denied Thomas a credit for taxes allegedly paid in another jurisdiction; (3) whether the Department followed proper procedures in issuing the tax warrant for Thomas's unpaid taxes; (4) whether Indiana has the authority to levy its adjusted gross income tax on its residents' out-of-state income; (5) whether the term "income" is misdefined in the adjusted gross income tax, and if so, whether the mistake invalidates the tax; (6) whether the term "state" is misdefined in the adjusted gross income tax, and if so, whether the mistake invalidates the tax; and (7) whether the adjusted gross income

tax is void for vagueness. Having carefully considered Thomas's arguments, the Court holds in favor of the Department.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The relevant facts are not disputed. Thomas filed an individual Indiana resident income tax return for 1992, listing his address as 5509 Washington Avenue in Evansville, Indiana. On the return, Thomas asked for a refund on the basis of a credit for income tax allegedly paid in Washington, D.C. On June 17, 1993, the Department denied the refund and disallowed the credit because it exceeded Thomas's adjusted gross income tax liability. Dep't Ex. 3, item 2. As a result, the Department issued a proposed assessment for $1,928.07 in tax, penalties, and interest. *Id.*

Thomas protested the assessment and filed an amended return. On his amended return, Thomas claimed the same credit but this time only to the extent of his Indiana tax liability. *Id.* Without holding a hearing or ruling on Thomas's protest, the Department issued a tax warrant based on the June 17, 1993 assessment. In January 1995, Thomas attempted to block any action based on the warrant by writing to the Vanderburgh County Sheriff's Office and by seeking an injunction against the sheriff in Vanderburgh Superior Court. *See* Dep't Ex. 3, items 5 & 6. Several months later, Thomas complained to the Department about the tax warrant, and the Department finally scheduled a hearing on Thomas's protest. *See* Dep't Ex. 3, items 2, 3 & 8. On September 22, 1995, after a telephone conference, the Department again disallowed the credit. This time the Department reasoned that no credit was due because Washington, D.C. is a reverse credit jurisdiction, meaning that Indiana residents pay Indiana tax on income earned in the District of Columbia but receive a credit in the District for Indiana tax paid. Dep't Ex. 2. Thomas appealed the Department's assessment and moved for summary judgment.

## STANDARD OF REVIEW

■ The Court reviews final determinations by the Department *de novo* and is not limited to the evidence presented or the issues raised before the Department. Ind. Code Ann. § 6–8.1–5–1(h) (West Supp.1996); *Associated Ins. Cos., Inc. v. Department of State Revenue*, 655 N.E.2d 1271, 1272 (Ind. Tax Ct.1995). This Court will grant summary judgment only when there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). If the Court finds no issues of material fact, then it may grant summary judgment in favor of either the movant or nonmovant. *Encyclopaedia Britannica, Inc. v. State Bd. of Tax Comm'rs*, 663 N.E.2d 1230, 1232 (Ind. Tax Ct.1996).

## DISCUSSION

■ As a threshold matter, Thomas objects to the Department's use of a reconstruction of his 1992 Indiana income tax return. Tr. at 50. He does not question the accuracy of the reconstructed version but only objects to the Department's failure to produce the original. *Id.* At trial, the Department relied on the reconstruction because it could not locate the original filing. Deputy Administrator Diana Freeman testified that she recalled having seen the original return at the time of the proposed assessment but that she had been unable to locate the document in time for trial. Tr. at 51. Freeman explained that the information from the original return had been entered on computer "line for line" and that she had used those entries to recreate the return and to calculate the taxpayer's tax liability. Tr. at 49–50. She further testified that she used a copy of Thomas's original 1992 federal income tax return to confirm his federal adjusted gross income, which served as the starting point for determining his Indiana adjusted gross income. Tr. at 52–53. *See* Ind.Code Ann. § 6–3–1–3.5(a) (West Supp. 1996).

■ This Court will admit the reconstructed return. A court may permit the use of secondary evidence to prove the contents of a writing when the original is lost or has been destroyed, unless the proponent lost or destroyed the document in bad faith. Ind.Evi-

dence Rule 1004.[1] While this Court does not condone the careless handling of tax records by the Department, the paramount concern in this context is the accuracy of the submission. Where, as here, there is no dispute as to the accuracy of the secondary evidence and no indication that the document was lost purposely, the evidence should be admitted. *See Lopez v. State,* 527 N.E.2d 1119, 1125 (Ind.1988) ("An effective objection must identify an actual dispute over the accuracy of the secondary evidence."); *Glasscock v. State,* 576 N.E.2d 600, 603 (Ind.Ct.App.1991) ("The purpose of the best evidence rule is to secure reliable information as to the contents of a document when those terms are disputed. Admission of secondary evidence is harmless when no dispute exists regarding its accuracy.").

■ Turning to Thomas's various challenges to the proposed assessment, he first argues that he was improperly denied a credit against his Indiana income tax liability for income tax that he allegedly paid in another jurisdiction. Before the Department, Thomas seemed to claim this credit based on income tax paid in Washington, D.C. The Department ruled that since Washington, D.C. is a reverse credit jurisdiction, Thomas would have to pay the Indiana tax. Dep't Ex. 2. On appeal, Thomas has apparently changed his position. At oral argument, Thomas contended that when he referred to Washington, D.C., he was actually referring to the federal government. Tr. at 65. In other words, Thomas appears now to be claiming a credit against his Indiana income tax for federal income tax paid.

■ In either case, Thomas is not due a credit. If Thomas is claiming a credit for income tax paid in Washington, D.C., then the Department rightly ruled that the District of Columbia is a reverse credit jurisdiction and that Thomas is therefore not enti-

tled to the credit.[2] If, on the other hand, Thomas is claiming a credit for paying federal income tax, he is also not due a credit. Indiana does not provide a credit for federal taxes paid. *See* Ind.Code Ann. ch. 6-3-3 (West 1989). Under either argument, then, this Court upholds the Department's proposed assessment.

■ Second, Thomas complains that the Department violated his due process and statutory rights when it issued the warrant without responding to his written protests and without holding a hearing. The record supports this claim. The statutory scheme clearly contemplates that the Department address any taxpayer protest before issuing a tax warrant or attempting to secure a judgment lien against a taxpayer. Indiana Code § 6-8.1-5-1 mandates that the Department demand payment for unpaid taxes in three circumstances: (1) if the person fails to properly respond to a notice of proposed assessment within sixty days; (2) if the person requests a hearing on the assessment but fails to appear; or (3) if after considering the evidence presented in the protest or hearing, the Department finds against the taxpayer. Ind.Code Ann. § 6-8.1-5-1(f) (West Supp. 1992). The statute further directs that the demand for payment be made through the tax warrant and judgment lien mechanisms outlined in Indiana Code § 6-8.1-8-2. Ind. Code Ann. § 6-8.1-5-1(f) & (g) (West Supp. 1992).

In this case, the Department does not deny that Thomas filed a written protest on the proposed assessment. Nor does the Department deny that it issued a tax warrant on the proposed assessment without formally ruling on the protest and without holding a hearing. While the Department failed to follow the statutory procedures, this Court holds that the error was harmless. Apparently, the Department recognized its blunder before it

---

1. The rule states: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Evid.R. 1004.

2. Under Indiana's credit agreement with Washington, D.C., Indiana residents pay Indiana tax

on income earned in the District, but they may seek a credit from Washington, D.C. for the Indiana tax paid. Ind. Admin. Code tit. 45, § 3.1-1-75 (1992); *see also* Department of Revenue, *Indiana Resident Individual Income Tax Booklet* 18-19 (1992); Department of Revenue, Information Bulletin # 28 (Apr. 1, 1988).

attempted to levy on Thomas's property and granted, albeit belatedly, his request for a hearing on the assessment. *See* Dep't Ex. 2; Dep't Ex. 3, items 7 & 8. Since Thomas alleges no deprivation of his rights as a result of the delay, this Court rules in favor of the Department on this issue.

Thomas also complains that the tax warrant was invalid because it was computer generated and unsigned. According to Thomas, Article 1, Section 11 of the Indiana Constitution requires that such "warrants" be supported by oath and affirmation and so must be signed.[3] While Thomas is correct that the right of Hoosiers to be free from unreasonable searches and seizures extends to the state's attempts to enforce the tax laws, *cf. G.M. Leasing Corp. v. United States,* 429 U.S. 338, 355–56, 97 S.Ct. 619, 630, 50 L.Ed.2d 530 (1977) (rejecting argument "that the warrant protections of the Fourth Amendment do not apply to invasions of privacy in furtherance of tax collection"), his argument misses the mark in this instance because a Departmental tax warrant is not the sort of "warrant" referred to in the Constitution. A Departmental tax warrant does not authorize state officers to enter upon a taxpayer's land or to seize a person's property. Rather, a tax warrant merely triggers the process for establishing a judgment lien against a taxpayer's property. *See* Ind.Code Ann. § 6–8.1–8–2(d) & (e) (West Supp.1992).[4] While an execution on a tax lien may well involve an intrusion of the sort contemplated by the framers and ratifiers of Article 1, Section 11, a tax warrant does not by itself authorize such an intrusion and, therefore, is not governed by the requirements of Article 1, Section 11.

Third, Thomas challenges Indiana's authority to levy the adjusted gross income tax on sources of income earned outside Indiana. This claim is clearly without merit. It is well-established that a state "may tax *all* the income of its residents, even income earned outside the taxing jurisdiction." *Oklahoma Tax Comm'n v. Chickasaw Nation,* 515 U.S. 450, ——, 115 S.Ct. 2214, 2222, 132 L.Ed.2d 400 (1995). In *New York ex rel. Cohn v. Graves,* the Supreme Court explained:

> That the receipt of income by a resident of the territory of a taxing sovereignty is a taxable event is universally recognized. Domicil itself affords a basis for such taxation. Enjoyment of the privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from the responsibility for sharing the costs of government.... A tax measured by the net income of residents is an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits. The tax, which is apportioned to the ability of the taxpayer to pay it, is founded upon the protection afforded by the state to the recipient of the income in his person, in his right to receive the income and in his enjoyment of it when received. These are rights and privileges which attach to domicil within the state. To them and to the equitable distribution of the tax burden, the economic advantage realized by the receipt of income and represented by the power to control it, bears a direct relationship.
>
> Neither the privilege nor the burden is affected by the character of the source from which the income is derived.

---

3. Article 1, Section 11 provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.
   Ind. Const. art. 1, § 11.

4. Subsection (d) states: "When the circuit court clerk receives a tax warrant from the department

or the sheriff, the clerk shall record the warrant by making an entry in the judgment debtor's column of the judgment record...." Ind.Code Ann. § 6–8.1–8–2(d). Subsection (e), for its part, provides: When the entry is made, the total amount of the tax warrant becomes a judgment lien against the person owing the tax. The judgment lien for taxes attaches to all the person's interest in any: (1) chose in action in the county; and (2) real or personal property in the county; excepting only negotiable instruments not yet due. Ind.Code Ann. § 6–8.1–8–2(e).

300 U.S. 308, 312–13, 57 S.Ct. 466, 467–68, 81 L.Ed. 666 (1937) (citations omitted). That a state chooses to grant a credit to residents for taxes paid in other jurisdictions should not be mistaken for a lack of authority to levy on such proceeds. *See* 2 J. Hellerstein & W. Hellerstein, *State Taxation* § 20.04 (Supp.1993). Thus, this Court holds that Indiana has the authority to tax the out-of-state income of its residents.

■ Fourth, Thomas challenges the definition of "income" under the Indiana tax laws. In this relation, Thomas does not dispute that the Indiana adjusted gross income tax expressly includes annuities in gross income.[5] His reasoning follows a much more circuitous route. According to Thomas, the citizens of Indiana (along with most other Americans) have been misled into believing that the federal government's authority to levy an income tax is much broader than is actually the case. As a result, when the Indiana legislature adopted the federal definition of income for its own income tax, it adopted a narrower definition than it perhaps intended.

More specifically, Thomas argues that the federal definition of income does not include wages, salaries, or other forms of compensation. His argument begins with the definition of income announced by the United States Supreme Court in *Eisner v. Macomber,* 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920). In that case, the high court defined income for the purposes of the Sixteenth Amendment[6] as " 'the gain derived from capital, from labor, or from both combined' " and held that a stock dividend was not income because it did not constitute "a gain [or] a profit ... *severed from* the capital ... *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal." *Id.* at 207, 40 S.Ct. at 193 (emphasis in

original). The distinction between income and its source is crucial, according to Thomas, because it means that an item of purported income "cannot be ... labor and income at the same time period." Pet. Ex. 1, at 3. Thus, wages, salaries, and even annuity payments do not constitute income to their recipients in the same taxable period in which they are received. Income derived from labor, on Thomas's view, results only when an employer pays an employee to produce a good or service and the sale of that good or service results in a profit. In those circumstances, the employer, not the employee, has derived income from labor.

Thomas is mistaken for several reasons, but this Court need only discuss two. First, even assuming the validity of Thomas's legal framework, monetary payments made in exchange for labor are clearly severed from labor and received or drawn by the recipient for his separate use, benefit, and disposal. In *Eisner* itself, the Supreme Court addressed this point, explaining that a monetary dividend payment would constitute income, separate and distinct from its capital source. 252 U.S. at 209, 40 S.Ct. at 194. Second, on Thomas's own argument the Indiana legislature intended to adopt a broad definition of income when it enacted the adjusted gross income tax, and it clearly and unambiguously included annuity payments in the definition of adjusted gross income. The Court fails to see why the plain language and intent of the legislature should not then control. *See, e.g., F.A. Wilhelm Constr. Co. v. Department of State Revenue,* 586 N.E.2d 953, 955 (Ind.Tax.Ct.1992) ("The legislature's intent embodied in a statute constitutes the law....."). Even if the federal government overstepped its constitutional authority, this would not have affected Indiana's sovereign

---

5. It cannot be doubted that annuity payments are included in Indiana adjusted gross income. The Indiana Code defines adjusted gross income the same as adjusted gross income under Section 62 of the Internal Revenue Code, subject to several modifications not applicable here. Ind.Code Ann. § 6–3–1–3.5(a) (West Supp.1996). Under Section 62, adjusted gross income is defined as gross income minus certain listed deductions. I.R.C. § 62. Gross income is defined as "all income from whatever source derived," including specifically, "[a]nnuities." I.R.C. § 61(a)(9).

Thus, by the plain language of the statutes, Thomas's annuity payments are considered part of his Indiana adjusted gross income.

6. The Sixteenth Amendment provides: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." U.S. Const. amend. XVI.

authority to levy its income tax. As this Court stated in *Richey v. Department of State Revenue*, "[t]he constitutional legitimacy of the general assembly's decision to tax income is beyond dispute." 634 N.E.2d 1375, 1376 (Ind. Tax Ct.1994).

■ Fifth, Thomas claims that he is exempt from Indiana adjusted gross income tax because he is not a resident of this state as "state" is defined in the Indiana Code.[7] The Code defines a "state" as "any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, and any foreign country or political subdivision thereof." Ind.Code Ann. § 6–3–1–25 (West 1989). The trouble arises, Thomas contends, because the words "the United States" do not refer to the fifty states of the union but rather refer only to the District of Columbia and the other territories and possessions of the United States. As a result, he claims that the entire Indiana taxing scheme is invalid.

This claim too fails. In *Richey v. Department of State Revenue*, this Court addressed a substantially similar claim and held that the phrase "United States" does refer to the fifty states of the union. 634 N.E.2d at 1376–77. Since Thomas does not dispute that he made his home in Evansville and filed his 1992 income taxes as a resident of Indiana, this Court finds that he was an Indiana resident for the purposes of the adjusted gross income tax.

■ Finally, Thomas claims that Indiana's income taxing scheme should be declared "void for vagueness" because it fails to properly define the terms "income" and "state." This Court is not convinced. First, it is by no means clear that the void for vagueness doctrine applies in this context, and Thomas cites to no case in which a court has entertained an indefiniteness challenge to a tax statute. *See Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 404 N.E.2d 585, 596 (1980) (questioning applicability of void for vagueness doctrine to non-penal statutes). Second, even reaching the issue, the statute is not unconstitutionally vague. The Department need only show that a person of average intelligence could reasonably understand what is expected of him under the act. *See Wesner v. Metropolitan Dev. Comm'n*, 609 N.E.2d 1135, 1140 (Ind.Ct.App.1993). In this case, the adjusted gross income tax statute, regulations, and Departmental bulletins more than adequately define the proceeds subject to taxation, and Thomas's protestations notwithstanding, he clearly understood what was expected of him when he filed his original and amended income tax forms.

## CONCLUSION

This Court finds that there is no issue of material fact and that the Department is entitled to judgment as a matter of law. The Court therefore DENIES Thomas's motion for summary judgment and AFFIRMS the Department's proposed assessment.

---

7. The Code imposes the adjusted gross income tax on the income of "every resident person," Ind.Code Ann. § 6–3–2–1(a) (West 1989), and defines "resident" *inter alia* as "any individual who was domiciled in this state during the taxable year," Ind.Code Ann. § 6–3–1–12(a) (West 1989). A person is considered domiciled in Indiana if he is physically present in Indiana with the intention of establishing his home in this state. *See* Ind. Admin. Code tit. 45, § 3.1–1–22 (1992).