Rockland R. SNYDER, Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

**No. 49T10–9806–TA–70.**

Tax Court of Indiana.

Jan. 21, 2000.

Rockland R. Snyder, Indianapolis, IN, Petitioner, Appearing Pro Se.

Jeffrey A. Modisett, Attorney General of Indiana, Vincent Mirkov, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Rockland R. Snyder (Snyder) appeals the final determination of the Indiana Department of State Revenue (Department) denying his protest challenging the constitutionality of Indiana's adjusted gross income tax on his wages for the 1993, 1994 and 1995 tax years. While Snyder raises various issues, the Court finds one to be dispositive: whether wages are income for purposes of calculating Indiana's adjusted gross income tax.

### FACTS AND PROCEDURAL HISTORY

Snyder, an Indiana resident, filed individual income tax returns for the 1993, 1994 and 1995 tax years. In each return, Snyder acknowledged having received wages but declared that his wages did not constitute income. Additionally, Snyder claimed refunds for all state income taxes withheld by his employer. The Department subsequently assessed Snyder for each year's unpaid taxes. Thereafter, Snyder protested the entire amount of state adjusted gross income tax owed for each year and the Department's refusal to grant him a refund. The Department conducted an administrative hearing on February 23, 1998. On April 27, 1998, the Department issued a Letter of Findings denying Snyder's protest.

Snyder filed an original tax appeal with this Court on June 22, 1998. He filed a motion for summary judgment on November 9, 1998. The Department filed its response to Snyder's summary judgment motion, together with its own cross motion for summary judgment, on December 4, 1998. On December 7, 1998, Snyder filed a response to the Department's cross motion for summary judgment. The Court heard arguments regarding the parties' respective motions on January 8, 1999.

Additional facts will be supplied where needed.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court reviews the Department's final determinations de novo and is not bound by either the evidence presented or the issues raised at the administrative level. *See* IND.CODE ANN. § 6–8.1–5–1(h) (West 1989 & Supp.1999); *Thomas v. Indiana Dep't of State Revenue,* 675 N.E.2d 362, 365 (Ind. Tax Ct.1997). Summary judgment is only appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* IND. T.R. 56(C); *Jefferson Smurfit Corp. v. Indiana Dep't of State Revenue,* 681 N.E.2d 806, 807 (Ind. Tax Ct.1997). Cross motions for summary judgment do not alter this standard. *See id.*

### Discussion

■ Although he admits that that the Indiana Constitution authorizes the General Assembly to impose an income tax, Snyder nevertheless claims that Indiana's individual income tax statutes do not define an individual's wages as income. Specifically, Snyder contends that, for purposes of computing his adjusted gross income, Indiana has adopted the definition of gross income used in the Internal Revenue Code. According to Snyder, that definition only includes wages as a "source" of income and not as "income" itself. As the Court explains *infra,* Snyder's position lacks merit.

■ As this Court noted in *Richey v. Indiana Department of State Revenue,* "The constitutional legitimacy of the general assembly's decision to tax income is beyond dispute. The right to tax is a crucial attribute of sovereignty." 634 N.E.2d 1375, 1376 (Ind. Tax Ct.1994) (citing *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 428, 4 L.Ed. 579 (1819)). The Indiana Constitution, art. IX, § 8 provides: "The general assembly may levy and collect a tax upon income, from whatever source derived, at such rates, in such manner, and with such exemptions as may be prescribed by law." The Indiana General Assembly, pursuant to the Adjusted Gross Income Tax Act of 1963 (the Act), *see* IND.CODE ANN. § 6–3–1–1 (West 1989), has imposed an adjusted gross income tax, *see* IND.CODE ANN. § 6–3–2–1 (West 1989). To define "adjusted gross income," as the term applies to all individuals, the Act adopts the definition in I.R.C. § 62 (1999), with certain modifications. *See* IND.CODE ANN. § 6–3–1–3.5(a) (West Supp.1999). Likewise, the Act adopts the definition for "gross income" found in I.R.C. § 61(a) (1999).[1] *See* IND.CODE ANN. § 6–3–1–8

---

1. Both parties correctly note that the definition of gross income as found in IND.CODE ANN. § 6–2.1–1–2 (West 1989), which provides that gross income means "all the gross receipts a taxpayer receives ... from [among other things] trades, businesses, or commerce," does not apply in resolving the issues raised in this case. The definition is inapplicable because the term "taxpayer," for the purpose of imposing the gross income tax, does not include "individuals" per se. *See* IND.CODE ANN. § 6–2.1–1–16 (West 1989 & Supp.1999) (amended 1993 and 1997). Rather, a "tax-payer" includes any one of several listed legal entities, social organizations, persons acting in official capacities or "other group or combination acting as a unit." *Id.* In contrast, the adjusted gross income tax applies to both individuals and corporations. *See Richey,* 634 N.E.2d at 1379 (citing IND CODE ANN. § 6–3–2–1 (West 1989)); *see also* IND.CODE ANN § 6–3–1–15 (West 1989) (defining "taxpayer" as "any person or any corporation subject to taxation under [I.C. 6–3]"). Snyder chal-

(West 1989). I.R.C. § 62 (1999) defines "adjusted gross income" to mean, "in the case of an individual, gross income" less various deductions. In addition, I.R.C. § 61(a) (1999) defines "gross income," in part, as follows: "all income from whatever source derived, including (but not limited to) ... Compensation for services, including fees, commissions, fringe benefits, and similar items."

To support his argument that wages are sources of income and not just income, Snyder relies heavily upon two United States Supreme Court cases—*Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920) and *Commissioner of Internal Revenue v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). The Court will briefly discuss each case.

In *Eisner*, the Supreme Court considered whether the Sixteenth Amendment permitted Congress to tax as income a taxpayer's stock dividend made against accumulated profits of the issuing corporation.[2] The Court in *Eisner* defined income as the "gain derived from capital, from labor, or from both combined." 252 U.S. at 207, 40 S.Ct. at 193. Applying this definition, the Court focused on the phrase "derived from capital," which included a "gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital ... [and] received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal...." *Id.* The Court first discussed the nature of a stockholder's interest, noting that a stockholder "the right to have the assets employed in the enterprise ... [but] has no right to withdraw [capital or profits]." *Id.*, 252 U.S. at 208, 40 S.Ct. at 194. Next, the Court explained that a stock dividend did not involve realization of gain by the stockholder but rather "that the company's accumulated profits have been capitalized, instead of distributed to the stockholders

or retained as surplus available for distribution in money or in kind should opportunity offer." *Id.*, 252 U.S. at 211, 40 S.Ct. at 194. According to the Court, the "essential and controlling fact is that the stockholder has received nothing out of the company's assets for his separate use and benefit." *Id.* Based on this reasoning, the Court held that the Sixteenth Amendment did not permit Congress to "tax without apportionment a true stock dividend made lawfully in good faith, or the accumulated profits behind it, as income of the stockholder." *Id.*, 252 U.S. at 219, 40 S.Ct. at 197.

In *Glenshaw Glass*, the Court addressed whether money received as exemplary damages for fraud or as the punitive two-thirds portion of a treble-damage antitrust recovery is subject to the federal gross income tax pursuant to I.R.C. § 22(a)(1954). Section 22(a), a predecessor to I.R.C. § 61(a), defined gross income in part to include "gains, profits, and income from salaries, wages, or compensation for personal service ... of whatever kind and in whatever form paid, or ... gains or profits and income derived from any source whatever." The Court initially observed that it "has frequently stated that this language was used by Congress to exert in this field 'the full measure of its taxing power.'" *Glenshaw Glass*, 348 U.S. at 429, 75 S.Ct. at 476 (citations omitted). The Court further noted that it "has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted." *Id.*, 348 U.S. at 430, 75 S.Ct. at 476 (citations omitted). The Court reviewed its holding in *Eisner*, stating that its definition of income in that case served a useful purpose by distinguishing gain from capital but that such definition "was not meant to provide a

---

lenges the State's income tax as it applies to him as an individual taxpayer.

**2.** The Sixteenth Amendment, ratified in 1913, provides: "The Congress shall have power to

lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

touchstone to all future gross income questions." *Id.*, 348 U.S. at 431, 75 S.Ct. at 477. The Court continued by observing that, in the case before it, "we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *Id.* Ultimately, the Court concluded that the damages in question were subject to the gross income tax. *See id.*, 348 U.S. at 433, 75 S.Ct. at 478. In so doing, the Court noted the legislative history of the revenue code, which labeled the statutory gross income tax as being "all-inclusive." *Id.*, 348 U.S. at 432, 75 S.Ct. at 477. Moreover, the Court stated that it "would do violence to the plain meaning of the statute and restrict a clear legislative attempt to bring taxing power to bear upon all receipts constitutionally taxable were we to say that the payments in question here are not gross income." *Id.*, 348 U.S. at 433, 75 S.Ct. at 477–78.

Neither *Eisner* nor *Glenshaw Glass* stands for the proposition that wages are not income. *Eisner* merely concluded that stock dividends are not income within the meaning of the Sixteenth Amendment because the taxpayer received no separate asset from the company for his own individual use and benefit. *See Eisner*, 252 U.S. at 211–12, 40 S.Ct. at 194–95. In short, the taxpayer realized no gain that was severed from and independent of the company's assets. *See id.* The Court in *Eisner* did not discuss what constituted a "gain derived from labor." However, by analogy to the Court's treatment of "gain derived from capital," one could reasonably surmise that the Court in *Eisner* would have viewed wages as representing the "gain" or "profit" independent and separate from the labor an individual provided in exchange for his or her wages. *Glenshaw Glass*, in turn, recognized the broad, far-reaching scope of the federal gross income tax law. *See Glenshaw Glass*, 348 U.S. at 429–30, 75 S.Ct. at 476. As did the taxpayers in *Glenshaw Glass*, Snyder has realized and controlled "undeniable accessions to wealth." *Id.*, 348 U.S. at 431, 75

S.Ct. at 477. Given that the Court liberally construes the definition of gross income, it is foolish to believe that *Glenshaw Glass* can be used to support any contention other than that wages are income subject to the federal gross income tax. Thus, Snyder's reliance upon these two cases is misplaced.

In addition, a vast number of authorities stand for the proposition that wages are income. Wages, by common definition, constitute payment for employment services and not sources of income. *See, e.g.,* BLACK'S LAW DICTIONARY 766, 1573 (7th ed.1999) (defining "income" as "payment that one receives ... from employment" and "wage" as "Payment for labor or services"); WEBSTER'S THIRD NEW INT'L DICTIONARY 1143, 2569 (1981) (defining income as "a gain or recurrent benefit that is usu. measured in money and ... derives from capital, labor, or a combination of both" and "wage" as "a pledge or payment ... by an employer esp. for labor or services"). Moreover, the federal courts have consistently viewed wages as income. *See United States v. Connor*, 898 F.2d 942, 943 (3d Cir.1990) ("Every court which has ever considered the issue has unequivocally rejected the argument that wages are not income.") (citations omitted); *Wilcox v. Commissioner of Internal Revenue*, 848 F.2d 1007, 1008 (9th Cir.1988) ("First, wages are income."); and *Coleman v. Commissioner of Internal Revenue*, 791 F.2d 68, 70 (7th Cir.1986) ("Wages are income, and the tax on wages is constitutional.") (citations omitted).

This Court, in fact, has previously considered whether payments for labor are separate and distinct from the labor performed. In *Thomas v. Indiana Department of Revenue*, 675 N.E.2d 362 (Ind. Tax Ct.1997), the taxpayer proffered an argument similar to Snyder's. Relying upon the Supreme Court's definition of income in *Eisner* (i.e. income is gain derived from capital, labor or a combination thereof), the taxpayer argued that the fed-

eral definition of income does not include wages, salaries or other forms of compensation. Specifically, the taxpayer claimed that the distinction between income and its source is crucial because purported income cannot be both labor and income at the same time. *See id.* at 368. The taxpayer further claimed that income is derived from labor only when an employer pays an employee to produce a good or service and the sale of that good or service results in a profit; even then, according to the taxpayer, only the employer has derived income. *See id.* This Court disagreed, pointing out "monetary payments made in exchange for labor are clearly severed from labor and received or drawn by the recipient for his separate use, benefit, and disposal." *Id.* In thus concluding, this Court observed that *Eisner* explained in like fashion that a "monetary dividend payment would constitute income, separate and distinct from its capital source." *Id.* (citing *Eisner,* 252 U.S. at 209, 40 S.Ct. at 194). This Court finds no fault with its opinion in *Thomas,* which in effect determined that wages are income. *See id.*

 Indiana relies upon the Internal Revenue Code's definitions for gross and adjusted gross income. Even so, in ascertaining whether Snyder is liable for his unpaid state adjusted gross income taxes, this Court is not obligated to adopt the federal courts' interpretations of income under I.R.C. § 61(a). However, their interpretations are certainly persuasive in this matter. Common definition, an overwhelming body of case law by the United States Supreme Court and federal circuit courts, and this Court's opinion in *Thomas* all support the conclusion that wages are

income for purposes of Indiana's adjusted gross income tax.[3]

### CONCLUSION

The Court finds that the material facts in this case are undisputed and that, as a matter of law, Snyder's wages are subject to the State of Indiana's adjusted gross income tax. Snyder has demonstrated no entitlement to relief. Therefore, the Court DENIES his motion for summary judgment. Moreover, the Court AFFIRMS the Department's final determination in this matter in all respects and GRANTS the Department's cross motion for summary judgment.

---

**3.** In addition to claiming that wages are "sources" of income and not income, Snyder maintains that the federal constitution prohibits Congress from subjecting the "source" of an individual's income to an income tax. To support this position, Snyder relies upon the United States Supreme Court's decision in *Brushaber v. Union Pacific Railroad Co.,* 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916). However, a careful reading of the *Brushaber* opinion proves that Snyder's position must be rejected. The Court in *Brushaber* recognized that the Sixteenth Amendment permits Congress to tax income without reference to the income's source. *See Brushaber,* 240 U.S. at 19, 36 S.Ct. at 242. Therefore, Snyder's position that sources of income may not be taxed is fatally flawed. *See Graves v. People of N.Y.,* 306 U.S. 466, 480, 59 S.Ct. 595, 598, 83 L.Ed. 927 (1939) ("The theory ... that a tax on income is legally or economically a tax on its source, is no longer tenable.").