SIMON AVIATION, INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–0003–TA–31.

Tax Court of Indiana.

April 2, 2004.

Stephen H. Paul, David Given, Thaddeus R. Ailes, Baker & Daniels, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Indianapolis, IN, Karen Hsu, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

Simon Aviation, Inc. (Simon) appeals the Indiana Department of State Revenue's (Department) imposition of Indiana use tax on aircraft lease payments it made during the years ending December 31, 1993, December 31, 1994, and April 30, 1995 (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment. The issue for the Court to decide is whether those lease payments are subject to Indiana's use tax.

### FACTS AND PROCEDURAL HISTORY

The material facts as they relate to this case are undisputed. Simon is an Indiana corporation doing business in Indiana and throughout the country.

In 1985, Simon leased an aircraft from Wells Fargo Leasing Corporation and CIT Group.[1] Simon took delivery of the aircraft in Canada. Simon flew the aircraft to various locations within the United States before it entered Indiana for the first time on November 26, 1986. In March of 1986, Simon leased a second aircraft from Manufacturers Hanover Commercial Corporation. After taking delivery of the aircraft in Connecticut, Simon made several flights on the aircraft to destinations within the United States before it entered the State of Indiana for the first time on October 11, 1986. While both aircraft were primarily hangared in Indiana during the years at issue, they were nonetheless used for interstate travel.

On July 28, 1987, upon Simon's inquiry, the Department issued a ruling in which it stated Simon's lease payments were not subject to Indiana's use tax because the aircraft were used primarily in interstate commerce ("DRS87–10"). The ruling also stated that "[a]ny changes in these facts should be submitted to the Department for reconsideration of this ruling." (Pet'r Original Tax Appeal, Attach. 1 at 3.)

In the early 1990's, the Department audited Simon and determined that, for tax years 1986 through 1989, Simon's lease payments were subject to use tax. Simon contested the proposed assessment, arguing that it had already received a ruling from the Department that the lease payments were not taxable. In the alternative, Simon argued that the Department was prohibited, under Indiana Code § 6–8.1–3–3, from adopting a position that would retroactively increase its tax liability. On June 2, 1992, the Department issued a letter of findings (1992 LOF), stating:

> In the instant case, the audit has established no change in either Indiana law or the taxpayer's situation [that] would warrant invalidating [DRS87–10].

> \* \* \* \* \*

> The taxpayer's protest is sustained. The Department finds that [DRS87–10] is still valid and that the assessment is inappropriate. The taxpayer's contention that such a retroactive assessment is prohibited by IC 6–8.1–3–3 is rendered moot by this finding and need not be addressed. This finding applies solely to the leases of the two aircraft under protest. *If new aircraft are acquired, new leases obtained, or any of the circumstances in this case change, the tax-*

---

1. With respect to this aircraft, Wells Fargo Leasing Corporation leased the frame and engines to Simon; CIT Group leased the avionics and other interior equipment.

*payer must notify the Department and request a new ruling.*

(Pet'r Original Tax Appeal, Attach. 2 at 2–3 (emphasis added).)

On March 31, 1993, Simon consolidated and refinanced its aircraft leases with General Electric Capital Corporation (GECC). Simon did not notify the Department of these changes.

On August 4, 1994, the Department sent a letter to Simon in which it stated:

This letter is to advise you that effective July 1, 1994, the Department is hereby rescinding . . . DRS87–10.

\* \* \* \* \*

[DRS87–10] granted [the] exemption under the commerce clause. Exemption under the commerce clause is not warranted as no evidence is available to indicate that Simon . . . [is] engaged in public transportation as required by [Indiana Code § ] 6–2.5–5–27.

The original decision may have been buttressed by the Missouri Supreme Court decision in *King v. L & L Marine Serv., Inc.,* 647 S.W.2d 524 (Mo.1983). However, it is important to note that this decision was overturned by the Missouri Supreme Court in *Director of Revenue v. Superior Aircraft Leasing Co.,* 734 S.W.2d 504 (Mo.1987).

[Simon's lease payments are taxable under] Indiana Code [§ ] 6–2.5–3–2[.]

(Pet'r Original Tax Appeal, Attach. 3 at 1–2.) The letter then stated "any aircraft purchased or leased after this date will be subject to Indiana . . . use tax." (Pet'r Original Tax Appeal, Attach. 3 at 3.)

On September 28, 1994, the Department issued another letter to Simon clarifying the substance of the first letter. That letter stated:

As our August 4 letter stated, due to more recent case law, it is now the position of the Department that irrespective of such interstate movement, Indiana Code [§ ] 6–2.5–3–2 subjects [your] aircraft to Indiana . . . use tax. The specific clarification requested relates to the implementation of the Department's rescission. of DRS87–10 in regard to the subject airplane leases in effect on July 1, 1994. In that regard, the Department will continue to recognize the validity of DRS87–10 as to those leases in effect between Simon . . . and [its] respective lessors as of July 1, 1994 and will not treat the periodic lease payments under those leases as subject to Indiana . . . use tax due to reliance of [Simon] on DRS87–10. However, in the event [Simon] should renegotiate either or both lease transactions in the future, or . . . should purchase or lease additional or replacement aircraft after July 1, 1994, such new transactions would be subject to Indiana . . . use tax.

(Pet'r Original Tax Appeal, Attach. 4 at 1.)

On January 24, 1995, the Department issued yet another letter to Simon. This letter provided in pertinent part:

This letter is a follow up to the Department's letters of August 4, 1994 and September 28, 1994. In those letters the Department addressed the rescission of [DRS87–10] and [its] application to the purchase or lease of additional aircraft occurring after July 1, 1994.

In accordance with Department Regulation[ ] 45 IAC 15–3–2, the Department hereby makes the rescission of DRS87–10 effective July 1, 1992. The reason for this change is that it recently came to [our] attention that [Simon] was informed [in the 1992 LOF] . . . that DRS87–10 was no longer valid to new aircraft acquired or to new leases obtained [thereafter].

In order to put this in its proper perspective, the Department will make the

effective date of the rescission July 1, 1992. The Department will continue to apply DRS87–10 as to those leases that were in effect prior to July 1, 1992 and will not treat the periodic lease payments under those leases as subject to Indiana [ ] use tax due to the reliance of [Simon] on DRS87–10. However, in the event [Simon] should renegotiate either or both lease transactions in the future, or if [it] should purchase or lease additional or replacement aircraft after July 1, 1992, such new transactions would be subject to Indiana sales/use tax.

(Pet'r Original Tax Appeal, Attach. 5 at 1.)

In 1996, the Department conducted another audit of Simon. As a result of this audit, it determined that, for the years at issue, Simon owed Indiana use tax (and interest thereon) on its lease payments with GECC in the amount of $147,367.61.

Simon subsequently protested the proposed assessment. In its protest, Simon alleged, *inter alia,* that DRS87–10 was still applicable and therefore its lease payments were not subject to use tax. On November 30, 1999, the Department issued a letter of findings (1999 LOF) in which it denied Simon's protest:

> [T]he 1992 LOF [ ] served to explicitly notify [Simon] that while [DRS87–10] could be relied on for that transaction, it was not applicable beyond the stated circumstances. The contention that [Simon] could rely on [DRS87–10] after the notification in the 1992 LOF is without merit.

(Pet'r Original Tax Appeal, Attach. 6 at 6.)

Simon initiated this original tax appeal on March 6, 2000. Simon subsequently filed its motion for summary judgment on November 29, 2000. The Department filed a response brief on February 21, 2001.[2] The Court conducted a hearing on April 4, 2001. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ This Court reviews final determinations of the Department *de novo.* IND. CODE ANN. § 6–8.1–5–1(h) (West 2000). Accordingly, the Court is not bound by either the evidence or the issues presented at the administrative level. *Snyder v. Indiana Dep't of State Revenue,* 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied.*

In addition, summary judgment is only appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Snyder,* 723 N.E.2d at 488. Cross motions for summary judgment do not alter this standard. *Williams v. Indiana Dep't of State Revenue,* 742 N.E.2d 562, 563 (Ind. Tax Ct.2001).

## DISCUSSION AND ANALYSIS

■ As this Court has previously explained, Indiana imposes a use tax on goods purchased outside of the state and brought into the state for use. *See Rhoade v. Indiana Dep't of State Revenue,* 774 N.E.2d 1044, 1047 (Ind. Tax Ct.2002). The imposition of this tax is generally based on two theories: (1) that Indiana merchants will lose business if taxpayers purchase goods out-of-state to avoid sales

---

**2.** Although not captioned as a cross motion for summary judgment, the Department's response brief requests that summary judgment be entered in its favor. Pursuant to Indiana Trial Rule 56(B), summary judgment may be granted to the non-moving party. Therefore, the Court will treat the Department's request as a cross motion for summary judgment. See *Hunt Corp. v. Indiana Dep't of State Revenue,* 709 N.E.2d 766, 767 n. 5 (Ind. Tax Ct.1999).

tax liability and (2) that the state will lose tax revenue if taxpayers purchase goods out-of-state. *See id.* Consequently, Indiana's use tax is functionally equivalent to its sales tax and is

(a) ... imposed on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction.

(b) The use tax is also imposed on the storage, use, or consumption of a vehicle, an aircraft, or a watercraft, if the vehicle, aircraft, or watercraft:

(1) is acquired in a transaction that is an isolated or occasional sale; and

(2) is required to be titled, licensed, or registered by this state for use in Indiana.

IND.CODE ANN. § 6–2.5–3–2(a) and (b) (West 1993).[3] While Indiana taxpayers are generally entitled to a credit against the use tax equal to the amount of any sales tax or use tax paid to another state, the "credit ... does not apply to the use tax imposed on the use, storage, or consumption of vehicles, watercraft, or aircraft that are required to be titled, registered, or licensed by Indiana." IND.CODE ANN. § 6–2.5–3–5 (West 1993).

Simon claims that the lease payments it made during the years at issue are not subject to use tax. To support that claim, Simon has presented three "alternative" arguments. (*See* Summ. J. Tr. at 17.) First, it argues that the lease payments are not taxable under DRS87–10 and the Department's 1992 LOF. In the alternative, Simon argues that the 1992 LOF constitutes a "retroactive change" in the

Department's policy, which is prohibited under Indiana Code § 6–8.1–3–3. Finally, or "in any event," Simon argues that the lease payments are not taxable pursuant to the Commerce Clause of the United States Constitution.

### 1. DRS87–10 and the Department's 1992 LOF

■ Simon first asserts that its lease payments are not taxable under DRS87–10 and the Department's 1992 LOF. More specifically, it explains that: 1) the 1992 LOF stated, undeniably, that DRS87–10 was "still" valid; 2) the 1992 LOF "d[id] not say that DRS87–10 would be invalid if a new lease agreement were entered into by Simon; it merely state[d] that the issue would need to be reconsidered[;]" and 3) DRS87–10 was not rescinded until 1994. (Pet'r Br. In Supp. of [Its] Mot. for Summ. J. at 7–9.) Thus, Simon asserts, the Department's conclusion (in the 1999 LOF) that DRS87–10 was no longer valid is an improper attempt to "constru[e]" the 1992 LOF to say something [ ] it doesn't." (Summ. J. Tr. at 21.)

■ The Department "provides advice to taxpayers in many different forms. Rulings are issued to individual taxpayers based upon specific factual situations." IND. ADMIN. CODE tit. 45, r. 15–3–2(d)(1) (1992). Consequently, taxpayer rulings are very limited in their application: only the taxpayer to whom the ruling was issued is entitled to rely on it, and, even then, only with respect to the particular fact situation provided in the taxpayer's written application for the ruling. *See id.*; 45 IAC 15–3–2(d)(3).

In the case at bar, the Department issued DRS87–10 in 1987, based on the facts

---

**3.** In other words, Indiana's use tax complements Indiana's sales tax to ensure that non-exempt retail transactions (particularly out-of-state retail transactions) that escape sales tax

liability are nevertheless taxed. *See USAir, Inc. v. Indiana Dep't of State Revenue,* 623 N.E.2d 466, 468–69 (Ind. Tax Ct.1993).

as they existed *at that time.* Accordingly, DRS87–10 indicated that "[a]ny changes in these facts should be submitted to the Department for reconsideration of this ruling." (*See* Pet'r Original Tax Appeal, Attach. 1 at 3.) In turn, the Department's 1992 LOF indicated that DRS87–10 was "still valid" because *the facts had not changed since 1987.* The 1992 LOF reminded Simon, however, that "[t]his finding applies solely to the leases of the two aircraft under protest. If new aircraft are acquired, new leases obtained, *or any of the circumstances in this case change,* the taxpayer *must* notify the Department and request a new ruling." (Pet'r Original Tax Appeal, Attach. 2 at 2–3 (emphases added).)

When Simon refinanced its leases in 1993, it did not notify the Department. (Summ. J. Tr. at 16.) Consequently, as of March 31, 1993, Simon placed itself outside the scope of the 1992 LOF—as well as DRS87–10. Indeed, the 1992 LOF indicated that if *any* facts in Simon's case changed—including the acquisition of new leases—Simon must notify the Department. *See Huntington County Cmty. School Corp. v. State Bd. of Tax Comm'rs,* 757 N.E.2d 235, 240 (Ind. Tax Ct.2001) (stating that the word "must," like the word "shall," has a mandatory rather than a discretionary meaning). By ignoring that directive, both the 1992 LOF and DRS87–10 became inapplicable as of March 31, 1993.

This is not to say, however, that had the Department been given the opportunity to review Simon's new factual circumstances, it would have necessarily determined that the lease payments were taxable. Nevertheless, it is inconceivable that Simon could not have anticipated such a result.

*Cf. id.* (stating that a statute's explicit requirement that each petition must be verified necessarily implied that if the petition was not verified, it was invalid); *Gulf Stream Coach, Inc. v. State Bd. of Tax Comm'rs,* 519 N.E.2d 238, 242 (Ind. Tax Ct.1988) (stating that a taxpayer who otherwise qualifies for an exemption can waive it by failing to follow proper procedure to obtain the exemption). Accordingly, this Court cannot say that, during the years at issue, Simon's lease payments fell within the non-taxable parameters of DRS87–10 and the Department's 1992 LOF.

### 2. Indiana Code § 6–8.1–3–3

■ Next, Simon states that if DRS87–10 is not applicable to the lease payments (by way of the 1992 LOF), then the Department's 1992 LOF constitutes a retroactive change in the Department's interpretation of the law. (Summ. J. Tr. at 29.) Such a change, Simon contends, is prohibited by Indiana Code § 6–8.1–3.3 which, during the years at issue, provided that "[n]o change in the [D]epartment's interpretation of a listed tax[4] may take effect before the date the change is adopted in a rule … if the change would increase a taxpayer's liability[.]" IND.CODE ANN. § 6–8.1–3–3(b) (West 1987) (amended 1996) (footnote added). Simon's argument, however, is misplaced.

First, the 1992 LOF did not, as Simon contends, constitute "a change in the law." (*See* Summ. J. Tr. at 29 (Simon's counsel's statement that the 1992 LOF revoking DRS87–10 was "a change in the law").) The 1992 LOF merely reiterated the terms of DRS87–10: given the specific factual circumstances, the lease payments were not taxable; however, a change in those

---

4. Indiana's use tax is a "listed tax" pursuant to Indiana Code § 6–8.1–1–1. IND.CODE ANN. § 6–8.1–1–1 (West Supp.2003).

facts might render DRS87–10 inapplicable. In addition, the 1992 LOF did not contain any statement, explanation, or analysis that would indicate the Department was changing its interpretation of the law. (*Cf.* Pet'r Original Tax Appeal, Attach. 3 at 1–2 (the Department's August 4, 1994 letter stating that "the Department is hereby rescinding ... DRS87–10" because "[e]xemption under the commerce clause is not warranted"); Pet'r Original Tax Appeal, Attach. 4 at 1 (the Department's September 28, 1994 letter stating "due to more recent case law, it is now the position of the Department that irrespective of such interstate movement, Indiana Code [§ ] 6–2.5–3–2 subjects [your] aircraft to Indiana ... use tax").)

Furthermore, as explained *supra,* Simon was advised *three* times that if its factual circumstances changed, DRS87–10 might not apply. Indeed, when Simon first applied for the ruling in 1987, it was cautioned that such a ruling would be "based on [a] specific factual situation[ ]." 45 IAC 15–3–2(d)(1). Second, when Simon received DRS87–10, it was notified that "[a]ny changes in these facts should be submitted to the Department for reconsideration of this ruling." (*See* Pet'r Original Tax Appeal, Attach. 1 at 3.) Finally, in the Department's 1992 LOF, Simon was again reminded that "[t]his finding applies solely to the leases of the two aircraft under protest. If new aircraft are acquired, new leases obtained, *or any of the circumstances in this case change,* the taxpayer *must* notify the Department and request a new ruling." (Pet'r Original Tax Appeal, Attach. 2 at 3 (emphases added).) Consequently, there was nothing "retroactive" about the Department's 1992 LOF. Accordingly, Simon's Indiana Code § 6–8.1–3–3 argument is without merit.

### 3. Commerce Clause

■ Finally, Simon argues that the imposition of Indiana use tax against its lease payments violates the Commerce Clause of the United States Constitution, which provides in part that Congress shall have the power "[to] regulate Commerce ... among the several States[.]" U.S. Const. Art. I, § 8 cl. 3. As this Court has previously noted, the Commerce Clause is

designed to create an area of free trade among the states. By its terms, the Commerce Clause is only an authorization for Congress to regulate commerce. However, there is a negative or dormant implication of the Commerce Clause that prohibits taxation by a state in a manner that discriminates against or unduly burdens interstate commerce.

*Hi–Way Dispatch, Inc. v. Indiana Dep't of State Revenue,* 756 N.E.2d 587, 603 (Ind. Tax Ct.2001) (internal quotations and citations omitted).

■ To determine whether a state tax unconstitutionally discriminates against or burdens interstate commerce, this Court applies the four-part test set forth in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), *reh'g denied.* The *Complete Auto* test provides that a state tax "will survive a Commerce Clause challenge if the tax (1) is imposed on an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce in favor of local commerce, and (4) is fairly related to services the state provides." *Indiana–Ky. Elec. Corp. v. Indiana Dep't of State Revenue,* 598 N.E.2d 647, 656 (Ind. Tax Ct.1992) (*IKEC*) (citations omitted). Simon maintains that the Department's imposition of use tax against its lease payments violates both the second and third prongs of the *Complete Auto* test.

### a. Fair Apportionment

The second prong of the *Complete Auto* test—the necessity of apportionment—is

intended to prevent multiple taxation of interstate commerce. *See IKEC*, 598 N.E.2d at 656–58. There are two methods by which the risk of multiple tax burdens upon an interstate commerce transaction can be avoided. First, multiple taxation may be avoided by providing a tax credit (as an offset or exemption) for a sales or use tax that has been paid to another state or jurisdiction. *D.H. Holmes Co., Ltd. v. McNamara*, 486 U.S. 24, 31, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21 (1988). Multiple taxation may also be avoided by imposing a tax in conformity with a formula that rationally relates the amount of the tax to the fraction of interstate activity taking place within the taxing state. *See IKEC*, 598 N.E.2d at 658.

■ Simon's argument focuses on two points. First, because Indiana Code § 6–2.5–3–5(b) denies a credit for sales and use taxes paid in other states, there is the possibility of multiple taxation. (*See* Pet'r Br. In Supp. of [Its] Mot. for Summ. J. at 13.) Second, the imposition of Indiana's use tax does not rationally relate to the fraction of activity taking place within Indiana because the Department is attempting to tax its lease payments in their entirety, despite the fact that "the vast majority of the 'storage, use, and consumption' of the Aircraft occurred outside of Indiana." (Pet'r Br. In Supp. of [Its] Mot. for Summ. J. at 14.)

Simon bears the burden of demonstrating that it has either been subject to multiple taxation, or that it is subject to the risk of multiple taxation. *See Hoosier Energy Rural Elec. Co-op., Inc. v. Indiana Dep't of Revenue*, 528 N.E.2d 867, 872 (Ind. Tax Ct.1988) (citing *Standard Pressed Steel Co. v. Washington Dep't of Revenue*, 419 U.S.

560, 563, 95 S.Ct. 706, 709, 42 L.Ed.2d 719 (1975)), *aff'd*, 572 N.E.2d 481 (Ind.1991), *cert. denied*, 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991). In this case, it has done neither.

First, Simon has presented no evidence to indicate that it has paid any sales or use tax to any other state at the time it initially leased its aircraft. Simon, therefore, cannot point to an actual cumulative tax burden. Similarly, it has not shown that it is at any risk of multiple taxation. Indeed, it has not shown that any other state would *now* have the power to tax the same transaction (i.e., the use, storage, or consumption of the aircraft that are the subject of the leases). *See Hoosier Energy*, 528 N.E.2d at 872–73. *See also Revenue Cabinet, Commonwealth of Kentucky v. Ashland Oil, Inc.*, 888 S.W.2d 701, 704 (Ky.Ct.App.1994), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995); *Great American Airways v. Nevada State Tax Comm'n*, 101 Nev. 422, 705 P.2d 654, 657 (1985), *cert. denied*, 479 U.S. 817, 107 S.Ct. 74, 93 L.Ed.2d 31 (1986); *Whitcomb Const. Co. v. Comm'r of Taxes*, 144 Vt. 466, 479 A.2d 164, 168 (1984). In other words, it has not been shown that any other states are attempting to extract a functionally equivalent tax from Simon.[5] *See Hoosier Energy*, 528 N.E.2d at 873 (footnote added). Thus, this Court need not decide "what effect a foreign jurisdiction's uncredited sales or use taxes would have on [Indiana's] taxing scheme." *See Great American Airways*, 705 P.2d at 657.

■ Furthermore, Simon's claim that Indiana is not apportioning its use tax based upon the amount of miles flown or hours spent in Indiana (*see* Petitioner's Brief In Support of [Its] Motion for

---

5. Simon merely, and generically, states that if every other state were to impose an identical tax, multiple taxation would occur "for a taxpayer who uses or stores its aircraft in anoth-

er state (in addition to Indiana) and is required to title, register, or license its aircraft in that state [as well.]" (Pet'r Br. In Supp. or [Its] Mot. for Summ. J. at 13.)

Summary Judgment at 14–15), fails to recognize the true function of the use tax. Indeed, use taxes function primarily to prevent the evasion of the state sales tax. *See* Jerome R. Hellerstein & Walter Hellerstein, State Taxation ¶ 16.01[2] (3d ed.1998 & 2000).

Indiana's use tax is imposed when an object, purchased out-of-state by an Indiana resident, is "stored, used, or consumed" within Indiana. A.I.C. § 6–2.5–3–2. In this case, the use tax is inherently apportioned because there is no danger of multiple state taxation of the same tax incidences. In other words, only Indiana has a sufficient nexus with Simon to levy a use tax upon its out-of-state aircraft acquisition. *Cf. Great American Airways*, 705 P.2d at 657.

### b. Discrimination Against Interstate Commerce

 Simon also argues that the imposition of Indiana's use tax against its lease payment violates the third prong— or discrimination prong—of the *Complete Auto* test. A state tax impermissibly discriminates against interstate commerce if it provides a direct commercial advantage to local business. *Rhoade*, 774 N.E.2d at 1050 (quotation marks and citation omitted). "In particular, a state tax impermissibly discriminates against interstate commerce when the state's taxing power effectively increases the tax burden for out-of-state transactions, thereby coercing taxpayers to conduct intrastate rather than interstate business." *Id.*

The Court finds that the imposition of Indiana's use tax against Simon's lease payments does indeed discriminate against interstate commerce and therefore violates the Commerce Clause. The Court finds persuasive its recent analysis in the *Rhoade* case. As the Court explained in that case, when Mr. Rhoade, an Indiana resident, purchased an automobile in Florida,

> [he] paid 6% Florida sales tax on the purchase price of his vehicle. Indiana then required him to pay its use tax at the rate of 5% on the purchase price of his vehicle. In the end, Rhoade was effectively assessed tax on the purchase price of this vehicle at the rate of 11%; had he purchased his vehicle in Indiana, he would have been assessed tax at a rate of only 5%[.] Because Indiana taxpayers in Rhoade's position will pay more tax for a vehicle purchased out-of-state than the same-priced vehicle purchased in-state, they have a direct financial incentive not to purchase vehicles out-of-state. In other words, Indiana's use tax forecloses tax-neutral decision making on the part of Indiana taxpayers with respect to out-of-state versus in-state vehicle purchases. Concomitantly, those who sell vehicles in Indiana have a direct commercial advantage over those who sell vehicles in other states because of the strong financial disincentive to purchasing a vehicle out-of-state. It is such discrimination and foreclosure of tax-neutral decision making that the Commerce Clause prohibits.

*Id.* (internal citations omitted).

Because Indiana's use tax results in a greater tax burden on aircraft purchased out-of-state than aircraft purchased in-state, the Court holds that it impermissibly discriminates against interstate commerce. Consequently, the Court GRANTS summary judgment in favor of Simon and against the Department.

### CONCLUSION

For the above stated reasons, the Court GRANTS summary judgment in favor of Simon and against the Department. The Court REMANDS the case to the Department and ORDERS it to refund to Simon

the appropriate amount of use tax to which it is entitled.[6]

6. "An exemption from or credit for Indiana's use tax will depend on the amount of sales or use tax already paid to another state by an Indiana taxpayer." *Rhoade v. Indiana Dep't of State Revenue,* 774 N.E.2d 1044, 1051 n. 5 (Ind. Tax Ct.2002). "The payment of another state's sales or use tax, however, will not necessarily exempt an Indiana taxpayer from the entire amount of Indiana use tax or entitle the taxpayer to a use tax credit equal to the out-of-state sales or use tax already paid." *Id.*