ATTORNEYS FOR PETITIONER:
**ANDREW K. LIGHT**
**JAMES H. HANSON**
**LYNNE D. LIDKE**
**RONALD J. MORELOCK**
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, P.C.
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA E. REAGAN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

**FILED**

Jun 30 2015, 1:07 pm

**CLERK**
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| ASPLUNDH TREE EXPERT CO., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1110-TA-63 |
| | ) | |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER ON PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**FOR PUBLICATION**
**June 30, 2015**

WENTWORTH, J.

Asplundh Tree Expert Company has appealed the Indiana Department of State Revenue's denials of its claims for a refund of use tax. The matter is currently before the Court on Asplundh's Motion for Partial Summary Judgment. Asplundh's Motion presents two issues that the Court restates as: 1) whether Asplundh properly paid Indiana use tax on its out-of-state purchases of commercial motor vehicles; and if so, 2) whether the imposition of use tax violated the Commerce Clause of the United States

Constitution. Finding that Asplundh properly paid use tax on its vehicle purchases and that the imposition of use tax did not violate the Commerce Clause, the Court grants partial summary judgment to the Department.

**FACTS AND PROCEDURAL HISTORY**

Asplundh, a foreign corporation headquartered in Willow Grove, Pennsylvania, is a private motor carrier that provides specialized vegetation management and emergency storm services to customers throughout the United States. (See Pet'r Des'g Evid. ("Simpson Aff.")[1] ¶¶ 1, 2.) Asplundh garages motor vehicles in various states, including Indiana, in order to provide these specialized services. (See Simpson Aff. ¶ 3.)

Between 2007 and 2009, Asplundh purchased over 500 custom-built commercial motor vehicles from non-Indiana retailers, intending to use the vehicles to provide its services in states other than Indiana. (See Simpson Aff. ¶¶ 2, 5, 8-9.) As a result, the vehicles were not delivered to Indiana, garaged in Indiana, and most were never even driven on Indiana's highways.[2] (See Simpson Aff. ¶¶ 5, 7-9.) Asplundh did, however, register and license the vehicles in Indiana under the terms of the International

---

[1] The Department claims this affidavit is inadmissible because the affiant, Asplundh's tax manager, lacks personal knowledge and cannot authenticate Asplundh's business records. (See Resp't Mem. Law Opp'n Pet'r Mot. Partial Summ. J. ("Resp't Br.") at 4-5.) The Department's claim is without merit because the affiant has averred that he does have personal knowledge and that he summarized Asplundh's business records after reviewing them. (See Pet'r Des'g Evid. ("Simpson Aff.") ¶ 1.) See also Skaggs v. Merchants Retail Credit Ass'n, 519 N.E.2d 202, 203 (Ind. Ct. App. 1988) (stating that for purposes of summary judgment, the "caselaw makes it clear that if knowledge and competence of the maker can be inferred from the affidavit, it will pass muster") (citation omitted).

[2] Asplundh has acknowledged that it operated 24 of the vehicles in Indiana, but this matter does not concern any of those vehicles. (See Pet'r Br. Supp. Mot. Partial Summ. J. ("Pet'r Br.") at 6, n. 4.)

Registration Plan (the IRP).[3] (See Simpson Aff. ¶¶ 6, 10; Hr'g Tr. at 10.) Asplundh also titled the vehicles in Indiana at which time it paid the Department (through the Indiana Bureau of Motor Vehicles (BMV)) approximately $2.6 million in use tax for the periods between January 1, 2007, and May 31, 2009 (the periods at issue). (See Simpson Aff. ¶¶ 6, 10.)

Asplundh subsequently filed two claims with the Department seeking a refund of the use tax it remitted on the vehicles. (See Simpson Aff. ¶¶ 8, 11.) The Department denied both of Asplundh's refund claims. (See Simpson Aff., Exs. B, D.)

Asplundh then filed two appeals with the Court challenging the Department's denials of its refund claims. The Court consolidated Asplundh's appeals on May 24, 2012. Asplundh filed its Motion on June 4, 2012. The Court held a hearing on October 31, 2012. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is proper only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "When any party has moved for summary judgment, the [C]ourt may grant summary judgment to any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." T.R. 56(B).

---

[3] "The International Registration Plan is a registration reciprocity agreement among states of the United States, the District of Columbia and provinces of Canada providing for payment of apportionable fees on the basis of total distance operated in all jurisdictions." IND. CODE § 6-6-5.5-1(a) n.1 (2015).

3

**I.**

The first issue is whether the imposition of use tax on Asplundh's out-of-state purchases of vehicles that were not operated in Indiana, but were registered, licensed, and titled in Indiana was proper. Asplundh contends that its vehicle purchases were not subject to use tax for two reasons: A) it did not use the vehicles in Indiana in a manner that would trigger imposition, and B) use tax cannot be imposed on the purchase of a vehicle that never entered the state.[4] (See Pet'r Br. Supp. Mot. Partial Summ. J. ("Pet'r Br.") at 11-19.)

**A.**

During the periods at issue, Indiana imposed an excise tax, known as the use tax, on "the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making the transaction." IND. CODE § 6-2.5-3-2(a) (2007) (amended 2012). Asplundh contends that the imposition of use tax was improper because licensing its vehicles in Indiana is not a taxable use under Indiana Code § 6-2.5-3-2(a). (See Pet'r Br. at 11.) To support its contention, Asplundh relies on the Department's own regulation, 45 IAC 2.2-3-5 (Regulation 3-5), which, during the periods at issue, provided in part:

> Every sale by a resident or nonresident person who is not a retail merchant as defined in this act of <u>a vehicle required to be licensed by the state for highway use in Indiana shall be deemed a retail transaction and the use of such vehicle shall be subject to the use</u>

---

[4] Asplundh also claims that the Department erred in finding that Indiana Code sections 6-2.5-3-2(b) and 6-2.5-3-6(d) authorized the imposition of use tax at the administrative level. (See Pet'r Br. at 8-10; Pet'r Des'g Evid., Ex. B.) Because the Department subsequently agreed, (see Resp't Br. at 10), the Court will not address this claim.

> tax which shall be paid by the purchaser to the Bureau of Motor Vehicles at the time of the licensing of the vehicle by the purchaser.

45 IND. ADMIN. CODE 2.2-3-5(a) (2007) (emphasis added) (see http://www.in.gov/legislative/iac). Asplundh claims that this regulation distinguishes between the "licensing" of a vehicle and the "use" of a vehicle, indicating that the Department does not consider licensing to be a taxable use. (See Pet'r Br. at 12-13.)

Regulation 3-5 does not support Asplundh's position, however, because it does not distinguish activities that constitute taxable uses from activities that do not. See generally 45 I.A.C. 2.2-3-5. Rather, Regulation 3-5 clarifies that occasional and isolated vehicle sales are retail transactions subject to sales and use tax, specifies when either the BMV or certain dealers must collect sales/use tax on a vehicle sale, and specifies the procedures for claiming a tax exemption on a vehicle sale. See generally 45 I.A.C. 2.2-3-5. Even if Regulation 3-5 expressly stated that licensing is not a taxable use, as Asplundh urges, it would not preclude the imposition of use tax on Asplundh's vehicle purchases because Asplundh also registered and titled its vehicles in Indiana. See SAC Fin., Inc. v. Indiana Dep't of State Revenue, 24 N.E.3d 541, 546-47 (Ind. Tax Ct. 2014) (explaining that the Court may not construe an unambiguous statute in a manner that would extend or contract its meaning by reading in language to correct supposed omissions), review denied; see also First Nat'l Leasing & Fin. Corp. v. Indiana Dep't of State Revenue, 598 N.E.2d 640, 643 (Ind. Tax Ct. 1992) (stating that the rules of statutory construction apply when construing administrative rules and regulations).

Indiana Code § 6-2.5-3-1(a) defines a taxable use as "the exercise of any right or power of ownership over tangible personal property." IND. CODE § 6-2.5-3-1(a) (2007). See also 45 IND. ADMIN. CODE 2.2-3-1 (2007) (see http://www.in.gov/legislative/iac)

5

(explaining that the regulatory and statutory definitions of a taxable use are the same). The parties do not dispute that Asplundh owned the subject vehicles and elected to register, license, and title them in Indiana. (See, e.g., Pet'r Br. at 3-4 (providing that under the IRP, Asplundh could have operated its vehicles in Indiana even if it registered, licensed, and titled them elsewhere).) Consequently, the Court finds that Asplundh properly paid use tax on its out-of-state vehicle purchases because it exercised its rights as an owner over those vehicles when it chose to register, license, and title them in Indiana.

**B.**

Next, Asplundh contends that the imposition of use tax was improper under Indiana Code § 6-2.5-3-2(a) because "[t]he very notion that a taxpayer can 'use' personal property in Indiana without the property ever having any physical presence in Indiana is inimical to any concept of state taxation." (Pet'r Br. at 16; see also Hr'g Tr. at 14, 20.) Asplundh reasons that because the use tax is measured by a subject property's value, it stands to reason that property must be physically present in the taxing state to impose the use tax. (See Pet'r Reply [Pet'r Br.] at 10-12.) To support this contention, Asplundh cites cases from other jurisdictions where the taxable "use" of a vehicle appears to require its physical presence (i.e., the actual operation of the vehicle) in the taxing state. (See Pet'r Br. at 17-20 (citing In re Culverhouse, Inc., 358 B.R. 806, 811 (M.D. Ala. 2006) (explaining that Alabama's use tax statute "mandate[d] the physical presence of [] vehicles in Alabama" for imposition of the tax); WPGP1, Inc. v. Dep't of Treasury, 612 N.W.2d 432, 435 (Mich. Ct. App. 2000) (finding that a taxable "use" did not occur when a taxpayer registered its airplanes under a Michigan address,

6

but did not have an actual office in Michigan); Florida Leaseco, LLC v. Dep't of Treasury, 2005 WL 3837688, at 10 (Mich. Tax Trib. 2005) (explaining that Michigan would not impose the use tax if the user of the property never brought it back to Michigan); State of Texas, 2011 WL 2580916, at *2 (Tex. Cptr. Pub. Acct. Apr. 28, 2011) (stating that Texas imposes the use tax when a Texas resident or person who is domiciled or doing business in the state uses a motor vehicle on the public highways of Texas)).)

Asplundh's reliance on these cases is not persuasive, however, because each of them construed their own state-specific imposition statutes and state-specific common law principles. See, e.g., WPGP1, 612 N.W.2d at 434 (construing Michigan's Use Tax Act). Moreover, cases from some of the same jurisdictions on which Asplundh relies, among others, have arrived at a different result. For instance, Michigan's Court of Appeals has held that

> "[U]se" in the context of the [Michigan Use Tax Act] is not limited to physical actions performed directly on the property. It includes any exercise of a right that one has to that property by virtue of having an ownership interest in it. Something need not necessarily be physically present in Michigan for it to be "used" in Michigan.

Fisher & Co., Inc. v. Dep't of Treasury, 769 N.W.2d 740, 743 (Mich. Ct. App. 2009) (emphasis added). In addition, Michigan's Supreme Court has held that the sole act of relinquishing control of an aircraft by executing a lease in Michigan is sufficient for imposition of the use tax under the Michigan Use Tax Act. See NACG Leasing v. Dep't of Treasury, 843 N.W.2d 891, 893 (Mich. 2014). Furthermore, the Illinois Court of Appeals has explained that "[t]he use tax is not a tax which arises out of the use or operation of tangible personal property, but rather it is a tax placed upon the exercise of

7

powers or rights incident to ownership." William O'Donell, Inc. v. Bowfund Corp., 252 N.E.2d 53, 55 (Ill. App. Ct. 1969).

Indiana's statutory definition of a taxable use is broad and leads to a very low threshold of taxability. See USAir Inc. v. Indiana Dep't of State Revenue, 623 N.E.2d 466, 469 (Ind. Tax Ct. 1993). Moreover, this Court has explained that the location of tangible personal property is not dispositive of whether the use tax applies because it would impermissibly limit the definition of a taxable use to either the intended or the ultimate use of the property. See id. at 471. Contrary to Asplundh's contention, therefore, the imposition of use tax does not necessarily depend on whether the subject property is physically present in the taxing state.

## II.

Asplundh contends that the imposition of use tax on the purchases of its commercial vehicles pursuant to Indiana Code § 6-2.5-3-2(a) violates the Commerce Clause of the United States Constitution.[5] (See Pet'r Br. at 20-23.) "[A] state tax 'will survive a Commerce Clause challenge if the tax (1) is imposed on an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce in favor of local commerce, and (4) is fairly related to services the state provides.'" Simon Aviation, Inc. v. Indiana Dep't of State Revenue, 805 N.E.2d 920, 927 (Ind. Tax Ct. 2004) (citing Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279 (1977), reh'g denied)). Asplundh contends that the imposition of the use tax in this case violates all four prongs of the Complete Auto test.

_____

[5] The Commerce Clause grants Congress the power "[to] regulate Commerce . . . among the several states." U.S. CONST. art. I, § 8, cl. 3.

8

**Substantial Nexus**

Asplundh contends that the imposition of use tax on it vehicle purchases violates the first prong of the <u>Complete Auto</u> test because "the <u>only</u> Indiana 'use' for which [it] is being taxed is the mere processing of paperwork in the acquisition of vehicle titles and IRP registration plates[,] <u>not</u> any Indiana use of the vehicles themselves[.]" (<u>See</u> Pet'r Br. at 22.) In other words, Asplundh maintains that it did not have a substantial nexus with Indiana because the vehicles were never physically present in Indiana.

The United States Supreme Court has explained that for purposes of the use tax, the substantial nexus prong of the <u>Complete Auto</u> test is satisfied when an entity has a physical presence in the taxing state. <u>Quill Corp. v. North Dakota</u>, 504 U.S. 298, 309-19 (1992). Here, the designated facts reveal that Asplundh "garages commercial motor vehicles in Indiana for operation in Indiana." (Simpson Aff. ¶ 3.) Accordingly, Asplundh has not shown that the imposition of use tax violated the substantial nexus prong of the <u>Complete Auto</u> test.

**Fairly Apportioned and Discrimination Against Interstate Commerce**

Next, Asplundh claims that imposing the use tax on its vehicle purchases violates the second and third prongs of the <u>Complete Auto</u> test. Asplundh's entire argument with respect to these two prongs is:

> To the extent the Department's Final Order declines to even consider affording [Asplundh] a credit for sales or use tax paid to other states on the subject vehicles, its position also violates the second "fair apportionment" and third "discrimination" prongs of the <u>Complete Auto</u> test.

(Pet'r Br. at 21 n.9.)[6]

---

[6] Asplundh did not discuss the second and third prongs of the <u>Complete Auto</u> test during the June 2012 hearing before this Court. (<u>See</u> Hr'g Tr.)

9

"The second prong of the Complete Auto test – the necessity of apportionment – is intended to prevent multiple taxation of interstate commerce." Simon Aviation, 805 N.E.2d at 927-28 (citation omitted). In turn, a state tax violates the third prong of the Complete Auto test "if it provides a direct commercial advantage to local business." See id. at 929 (citation omitted). Asplundh has not shown that it has been subject to multiple taxation, that it is subject to the risk of multiple taxation, or that the Department's imposition of use tax provided a direct commercial advantage to local business over interstate business. In fact, Asplundh's tax manager averred that Asplundh did not pay sales tax on several of its vehicle purchases. (See Simpson Aff. ¶ 5 ("Sales tax was not charged at the point of sale [on 261 vehicles] for a variety of reasons such as an applicable exemption in the selling retailer's state or an out-of-state 'FOB destination' delivery").) Consequently, Asplundh has not met its burden of demonstrating that the imposition of use tax violates the second and third prongs of the Complete Auto test.

## Fairly Related to State Services

Finally, Asplundh contends that the Department's imposition of use tax violates the fourth prong of the Complete Auto test because

> the only things the state has given [Asplundh] are the title documents, IRP plates, and registration papers for its vehicles, and, in return [Asplundh] has already paid Indiana the required titling, plating, and registration fees charged for those things. But Indiana has given [Asplundh] nothing in return for the use tax assessed on the value of the subject vehicles themselves given that not one of the vehicles ever used any Indiana highway, ever consumed any Indiana resources, or ever otherwise burdened Indiana in any way.

(Pet'r Br. at 23.) Asplundh's argument, however, misinterprets what this fourth prong requires.

"When a tax is assessed proportionally 'to a taxpayer's activities or presence in a

10

State, the taxpayer is shouldering its fair share of supporting the State's provision of police and fire protection, the benefit of a trained work force, and the advantages of civilized society.'" Anderson v. Indiana Dep't of State Revenue, 758 N.E.2d 597, 602 (Ind. Tax Ct. 2001) (citation omitted), review denied. The Department has explained that Indiana provided all of the services related to Indiana's "One Stop Shop" IRP registration program as well as access to Indiana's judicial system in exchange for Asplundh's payment of the use tax. (See Resp't Mem. Law Opp'n Pet'r Mot. Partial Summ. J. ("Resp't Br.") at 14; Hr'g Tr. at 53-54.) (See also Pet'r Br. at 2-3 (describing the "One Stop Shop" program).) Asplundh, therefore, has not met its burden of showing that Indiana's imposition of the use tax was not fairly related to the services it received. Accordingly, the Court finds that the imposition of the use tax on Asplundh's vehicle purchases did not violate the fourth prong of the Complete Auto test.

## CONCLUSION

For the above-stated reasons, the Court GRANTS partial summary judgment in favor of the Department and against Asplundh. The Court will issue, under separate cover, an order scheduling this matter for further proceedings.

SO ORDERED this 30th day of June 2015.

Martha Blood Wentworth, Judge
Indiana Tax Court

Distribution:
Andrew K. Light, James H. Hanson, Lynne D. Lidke, Ronald J. Morelock, Jessica E. Reagan.